## BALL–CARDEN CO. v. RIDGELL. (No. 7157.)

(Court of Civil Appeals of Texas. Dallas. July 4, 1914. Rehearing Denied Dec. 19, 1914.)

1. CONTRACTS (§ 284*)—CONSTRUCTION.

Where a contract for the sale of gravel provided that the buyers should pay only for material usable under the terms of their contract with the federal government for locks and dams as interpreted by the United States engineer in charge, the determination of the engineer is conclusive.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1292–1302, 1308–1310, 1312–1316, 1326–1338, 1340–1342, 1344–1346, 1350, 1351; Dec. Dig. § 284.*]

2. CONTRACTS (§ 290*)—REJECTION—ESTOPPEL — EQUITABLE ESTOPPEL — WHAT CONSTITUTES.

The buyers are not estopped from denying that gravel tendered by the seller was not usable under the contract, because the engineer, after rejecting it, allowed them to use that part which was delivered, upon putting more concrete in the mixture, it appearing that the buyers did nothing to cause the seller to change his position and that the use of additional concrete would vastly increase the expense of the work.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 1317; Dec. Dig. § 290.*]

3. CONTRACTS (§ 290*)—CONSTRUCTION.

The engineer who rejected the gravel delivered and tendered was not authorized, under the government contract providing that he might vary the percentage of concrete in case stone dust or sand be found in the gravel, to permit the use of gravel not up to specifications and containing no stone dust or sand and to require additional cement, so as to compel the buyers to accept gravel not up to specifications.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 1317; Dec. Dig. § 290.*]

4. APPEAL AND ERROR (§ 1175*)—DETERMINATION.

Where the case was fully developed below, it is the duty of the appellate court, if possible,

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexer

to render such judgment as should have been rendered by the trial court.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4573–4587; Dec. Dig. § 1175.*]

Appeal from District Court, Dallas County; Kenneth Foree, Judge.

Action by R. R. Ridgell against George A. Carden and P. D. C. Ball, copartners doing business as the Ball-Carden Company. From a judgment for plaintiff, defendants appeal. Reversed and rendered.

B. B. Hemphill, Tarlton, Morrow & Cockrell, and Gray & McBride, all of Dallas, for appellants. T. B. Ridgell, of Rockwall, and J. C. Muse, of Dallas, for appellee.

TALBOT, J. Appellee Ridgell brought this suit against appellants, Ball-Carden Company, a partnership firm composed of George A. Carden and P. D. C. Ball, alleging that appellants had contracted to buy from appellee 26,000 yards of gravel and sand to be used in the construction of locks and dams numbered 2 and 4 on the Trinity river for the United States government, the total consideration for said gravel and sand being $2,600. It is charged that the appellants, after having taken and used $249.59 worth of gravel, had failed to take the balance of the gravel, as contracted for, and judgment was sought and rendered for the unpaid portion of the contract price for the gravel, the judgment being for $2,350.31, with interest. The contract sued on is in writing, is dated February 26, 1909, and the portions thereof material to this controversy are as follows:

"Know all men by these presents, that I, R. R. Ridgell, for and in consideration of the sum of twenty-six hundred ($2600.00) dollars, to be paid to me as hereinafter set forth, do hereby sell, assign and convey unto Ball-Carden Company, a firm composed of P. D. C. Ball and George A. Carden, twenty-six thousand (26,000) yards of gravel, or gravel and sand, or rock and sand, hereinafter called material, in such proportions as may be desired by Ball-Carden Company; said material being embraced within and on or under the ground selected by Ball-Carden Company, a part of the premises of the above named seller, situated about two miles in a southerly direction from the town of Kleburg in Dallas county, Texas. The conditions of this sale are as follows: Said Ball-Carden Company shall not be bound to pay for any material, which is not usable under the terms of their contracts with the United States government on locks and dams Nos. 2 and 4, as the same is or may be interpreted by the United States engineer in charge, nor for any material which, not having been used in such locks and dams, has been washed away or made unavailable for said use by floods or overflows, or otherwise, but the said Ball-Carden Company shall be bound to pay unto said seller, only for said material used in the construction of the said locks and dams, the sum of eleven (11) cents per cubic yard, measured in place as concrete in said locks and dams, and the same shall be paid for according to the estimate of the government, monthly, on the 15th day of each month succeeding the month for which such measurement and estimate is made: For so much of said material as is not used in said locks and dams Nos. 2 and 4, and used elsewhere or sold by Ball-Carden Company for such use, but the same is to be used; if material offered comes up to specifications of government, but same must be offered so as not to delay the use thereof, the said Ball-Carden Company are to pay unto the said seller the sum of ten (10) cents per cubic yard, measured on cars, until said payments, together with the payments made for said material, measured as concrete in place in said locks and dams, as aforesaid, shall equal the sum of twenty-six hundred ($2600.00) dollars, when this contract shall be considered by the parties hereto to have been completely fulfilled. * * * It is understood, as aforesaid, the basis of measurement of the material used in said locks and dams shall be the concrete in place in said locks and dams, but if any party hereto shall be dissatisfied with the measurement of same by the engineer of the United States government in charge, then they shall co-operate together for the purpose of securing an absolutely correct measurement."

The defendant P. D. C. Ball, not having been served with citation, did not appear and answer, but the defendants Ball-Carden Company and George A. Carden answered by general and special demurrers, a general denial of the material allegations of plaintiff's petition, and specially, among other things, that the effect and meaning of the contract which was entered into was that the defendants were not required to accept the sand and gravel offered by plaintiff unless the same should come up to the specifications promulgated by the United States government, whereunder said locks and dams were to be constructed, and were not to be used or paid for unless said sand and gravel were usable by the defendants under the terms of their contracts with the United States government for the construction of said locks and dams Nos. 2 and 4, as said contracts should be interpreted by the United States engineer in charge, that defendants tendered the sand and gravel of the plaintiff to the said engineer in charge of the construction of said locks and dams, and that said engineer decided that said sand and gravel was not usable under the terms of said contracts with the government, and refused to allow defendants to use same in the construction of said locks and dams, and therefore defendants, under the terms of their contract with plaintiff, were not obligated to and did not use said sand and gravel. These defendants also pleaded the statutes of limitation of two and four years in bar of plaintiff's action. A trial by the court without a jury resulted in a verdict and judgment in favor of the plaintiff against the firm of Ball-Carden Company and George A. Carden individually, and they appealed.

[1] The leading question arising on the appeal, and one that controls the decision of the case, is whether or not the gravel claimed to have been purchased by appellants from appellee came up to or complied with the specifications of appellants' contract with the United States government and "usable,"

as contemplated by the terms of appellants' contract with the appellee, in the construction of the locks and dams in question. Appellants contracted to take 26,000 yards of gravel and sand from appellee's land and to pay him therefor 11 cents per cubic yard, or $2,600 for the whole. They took only about 2,269 yards, paying therefor the sum of $249.59, and appellee's suit is bottomed upon appellants' failure to take all the gravel and sand which they agreed to take under the contract of purchase. Appellee testified:

"Mr. Carden paid me for all that he got. My complaint is that they did not take the gravel that they contracted to take."

The contract for the purchase of appellee's gravel and sand was made after appellants had contracted with the United States government to construct locks and dams Nos. 2 and 4, and for the purpose of enabling them to carry out that contract. Their contract with the United States government specifically regulated the proportions of the sand, gravel, and cement which were to be used in the construction of the work thereby undertaken, and particularly stated that the gravel should be clean and of a satisfactory quality, and that not less than 50 per cent. of it should be composed of pebbles not less than one inch in diameter. As has been seen, appellants purchased appellee's gravel and sand upon condition that they were not bound to pay for any of it which was—

"not usable under the terms of their contract with the United States government on locks and dams Nos. 2 and 4, as the same is or may be interpreted by the United States engineer in charge, nor for any material which, not having been used in such locks and dams, has been washed away or made unavailable for said use by floods or overflows or otherwise."

The concrete to be used in the construction of the locks and dams as specified in said contract with the government was to be composed of one barrel of Portland cement, 12 cubic feet of sand, and 24 cubic feet of broken stone or gravel, all measured by loose bulk or an approved method, and in the event stone dust or sand was found in the broken stone or gravel, these proportions might be varied by the engineer to suit the existing conditions. Now, it is placed beyond controversy by the evidence that the gravel contracted for by appellants did not measure up to or comply with the specifications contained in appellants' contract with the United States government. A. E. Waldron, who was the engineer of the United States government, in charge of and superintending the work of constructing the locks and dams, and whose duty it was to see that the gravel and sand used in the construction complied with the specifications in appellants' contract with the government, unequivocally testified that the gravel bought by appellants from appellee did not comply with said specifications, and that he refused to allow it to be used by appellants in the construction of the locks and dams. Among other things, he said:

"The proportion of large-size pebbles in the gravel was nowhere near that required by the specifications. I refused to allow the use of gravel containing too large a proportion of small-size pebbles. No question arose as to the sand, but the gravel did not comply with the specifications. The contract required that the work be performed in accordance with the specifications mentioned. The proportion of pebbles exceeding said size was not as large as required by the specifications. In fact, as I now recall it, there were practically no pebbles of the size which the specifications required should constitute some 30 or 40 per cent. of the gravel."

By the terms of appellants' contract with appellee the question of whether or not the gravel purchased complied with the specifications of appellants' contract with the United States for the construction of the locks and dams was left to the judgment of the government's engineer, and the determination of A. E. Waldron that it did not is conclusive of the matter, regardless of any view other witnesses may have expressed in relation thereto, and settles the issue in favor of the appellants.

[2] But notwithstanding the engineer decided that the gravel agreed by appellants to be taken from appellee's land did not comply with the specifications of appellants' contract with the United States government, yet the evidence clearly shows that afterwards the engineer agreed that the gravel might be used in the construction of the locks and dams, provided appellants would use in the concrete mixture an additional sack of cement to each cubic yard thereof, and that appellants, under this requirement, used the amount of gravel paid for by them, and appellee contends that in view of these facts appellants are estopped from denying that the gravel was usable under their contract with the government. Should this view of appellee be sustained? We think not. The theory of estoppel advanced is not, in our opinion, correct. There is no evidence in the record that appellee was induced by the conduct of appellants to change his attitude with respect to the written contract made with appellants or the subject-matter of said contract; nor is there any testimony that said contract was ever in any manner altered or modified. Plaintiff's petition and alleged cause of action is based solely upon said written contract, and appellee testified that Ball-Carden Company never asked him to make any change in said contract. Besides, in appellee's brief it is declared that he "relies for a recovery upon the contract between appellant and appellee which appears in the statement of facts." The undisputed evidence is that the engineer of the United States government condemned the gravel agreed to be taken from appellee, on the ground that it did not come up to the specifications in appellants' contract with the government, and only permitted the use of it at all upon the condition that one sack of cement, in addition to the number required by

the specifications, be used; that the amount of gravel used by appellants, after this demand of the United States government, was used by appellants in an honest effort to perform their contract with the government, and that this effort demonstrated that the use of the extra sack of cement would entail upon them an additional expense, in constructing the locks and dams of about 50 cents per yard of concrete to be used therefor, and would be practically prohibitive of the use of appellee's gravel in doing that work. It is because of this effort that appellee contends that appellants have forfeited their right to insist upon the recognition by the courts of that provision of their contract with appellee which renders them liable to him, for only such gravel as was usable, under the terms of their contract with the United States government, and our conclusion is that the contention is not sound.

[3, 4] The claim of appellee to the effect that, under the terms of appellants' contract with the United States government, the engineer was authorized to vary the proportions of the gravel, sand, and cement to be used in the concrete mixture, and that therefore the engineer, in requiring the use of the extra sack of cement, did no more than said contract provided for, is not borne out by the language of the contract. The only power given the engineer to vary the proportions of gravel, sand, and cement, as specified in the contract, was where "stone dust or sand was found in the broken stone or gravel." In this event only was the engineer authorized to vary the proportions to meet and satisfy the existing conditions. The contract will be searched in vain for authority conferred upon the engineer to vary the requirement as to the quality or size of the gravel to be used, and the contract expressly stipulates that the gravel "shall be clean and of a satisfactory quality, and not less than 50% of it shall be composed of pebbles and not less than one inch in diameter." It is not pretended that because of "stone dust" or "sand" found in the gravel acquired from appellee, the engineer was authorized to demand the use of the extra sack of cement. There is no evidence whatever that such dust or sand was found in the gravel, and hence no basis for any such contention.

Our conclusion is that the gravel appellants contracted to take from appellee's land was not "usable" under the terms of appellants' contract with the United States government according to the ruling of the government's engineer, and that therefore appellants, under the terms and conditions of their contract of purchase from appellee, were not bound to take and pay for said gravel, and that judgment should have been rendered in the court below in their favor. This conclusion renders it unnecessary to consider any other question presented in appellants' brief, and, as the case seems to have been fully developed, it becomes our duty to render in this court such judgment as should have been rendered in the trial court.

It is therefore ordered that the judgment of the district court be reversed, and that judgment be rendered in this court for appellants.