[L. A. No. 10353. In Bank.—November 3, 1930.]

GEORGE H. OSWALD, Appellant, v. CITY OF EL CENTRO (a Municipal Corporation), Respondent.

46

George D. Blair and Hickcox & Trude for Appellant.

Dorsey G. Whitelaw for Respondent.

SEAWELL, J.—This appeal is taken by plaintiff from a judgment refusing the cancellation of a certain lease entered into by plaintiff and defendant. The grounds upon which the validity of said lease is assailed by plaintiff and appellant are that it was executed without consideration to appellant; that it was obtained by means of intimidation, oppression, menace and coercion practiced by defendant upon plaintiff; that the entire transaction is violative of and contrary to public policy and good morals. No serious disagreement exists between counsel to this appeal as to the facts of the case as hereafter related. Those not expressly admitted are not controverted.

The controversy arises out of a street improvement contract, which had its inception on June 4, 1924. Some two

years prior to that date, George H. Oswald, the plaintiff and appellant, was awarded a contract by the City of El Centro to perform certain construction and improvement work ordered by said city. The work, in due time, was completed and accepted by said city. It is the contention of said city that said improvements contained latent defects which rendered them, within a short time after the acceptance thereof, unserviceable, and the city was required to expend large sums of money thereafter in repairing said defective construction.

On November 30, 1923, by resolutions of intention Nos. 261 and 262, respectively, said city awarded contracts to the Los Angeles Paving Company for the paving and improvement of two other certain streets within said city, which contracts were, on April 10, 1924, assigned to appellant Oswald, who thereupon entered upon the performance of said contracts, and after prosecuting the same with diligence it became evident that the work could not be completed within the time fixed by the superintendent of streets and that it would require an extension of two weeks beyond the time limit fixed by said superintendent of streets for the completion of said work. Oswald filed his application in writing for an extension of time, which matter came regularly before the city trustees on June 4, 1924, for action thereon. No fault was found in any respect with the work as performed or the materials as furnished by the appellant in the construction of said improvements, nor with the diligence with which the improvements had been prosecuted. In fact, the construction work was performed under the close scrutiny of the city engineer and superintendent of streets and strictly conformed with the plans and specifications.

The extension requested by appellant was the first and only request made by him and the findings of the court and admissions of counsel for respondent are to the effect that said work could not have been completed within the time provided in said contracts. The work, which was a district bonded improvement, was inaugurated pursuant to the Improvement Bond Act of 1911, Statutes of 1911, page 730, together with the amendments thereto. By said statute the superintendent of streets is authorized to make all written

contracts that pertain to the street department. He is directed to fix the time for the commencement and for the completion of the work, which must be prosecuted with diligence thereafter to completion, and he may extend the time so fixed from *time to time* under the direction of the city council. All applications for such extensions of time, if in writing, must be filed in the office of the clerk before the expiration of the original time fixed in the contract, or in the time granted by the extension, as the case may be. Any extension of time shall not release the surety upon any bond required under the act. The work must in all cases be under the direction and to the satisfaction of the superintendent of streets, and the materials used shall comply with the specifications and be to the satisfaction of said superintendent of streets. If the contractor fails to complete the work within the time limited in the contract, or within the further time as the city council may give him, the superintendent of streets shall report such delinquency to the city council, which may relet the unfinished portion of said work after pursuing the formalities prescribed in said act for the letting of the whole in the first instance. It also contains the provision that it is to be liberally construed to the end that its purposes may be effective.

The period in which the improvements shall be completed is but the result of an estimate made by the superintendent of streets as to time that will be required to complete the work, and it is clear from sections authorizing extensions of time for the completion of such work that the power of the board of trustees to grant said extensions is not a power to be arbitrarily exercised, but it is to be exercised when the exigencies of the particular case reasonably justify the granting of extensions of time. No claim is made that the request was not reasonable or that the failure of the completion of the improvement was attributable to the unreasonable delay or the fault of appellant. That the extension requested, and which was granted upon appellant yielding to the pressure brought to bear upon him, was a reasonable request and one which would have been granted, as in ordinary cases, but for the opportunity presented by fortuitous circumstances to apply coercive methods to compel the execution of the lease which appellant seeks to have canceled,

there is not, within the case presented, room for doubt. The extension applied for was the first and only extension requested by appellant and it conformed with the requirements of the statute in every particular.

Appellant was at all the times herein mentioned the owner of real estate situate in the City of El Centro upon which he operated a street-paving plant consisting of tracks, roller and such equipment as is necessary for the construction and repair of general street improvements. The value of the real estate and of the plant, considered separately, took a wide range in the evidence. The court found, upon widely conflicting testimony, that the value of the real property and plant at the time said lease was executed was approximately $26,000. No finding was made as to the plant's rental value.

Appellant was personally present and presented his case when the matter came regularly before the board of trustees for action on said evening of June 4, 1924. The application for an extension of time met with the positive refusal of the board unless the appellant would consent to enter into the lease of said plant for a nominal money consideration. The proceedings had at said meeting, as told by the plaintiff and which are not questioned or disputed, but, on the contrary, are corroborated by members of the board, were substantially as follows:

"I was present at the meeting of the Board of Trustees at 7:30 P. M., on June 4, for the purpose of asking for an extension of time on this contract and had a conversation with the members of the Board of Trustees at that time.

"I was sitting back there in a seat and they were doing their regular business and Lavayea asked me what I wanted and I told him I wanted an extension of time. Mr. Lavayea was chairman of the Board and Mr. Fawcett [councilman] then spoke up and told me that—started in to talking and told me, he said, 'Mr. Oswald you can't get an extension of time, and furthermore if we do give you an extension of time you will have to do certain things, first put a two-inch asphalt wearing surface over several streets, Main street, Fourth, Len Rey, Sandalwood and a few others. [The repair work mentioned was to be done on streets constructed by appellant some two or three years prior to June

4, 1924.] Furthermore, you will have to lease this land to the City for ten years at a dollar a year . . . We have you where we want you . . . you will have to be a good dog, we got you where we want you.' And I plead with him and told him I couldn't do it, but he said, 'Nevertheless George, that is what you got to do.' I told him, I said, 'Mr. Fawcett, don't you realize that this is a lot of money that I have got tied up here?' He said, 'I don't care, George, whether you lose the whole thing or not.' Then I told him, I said, 'Mr. Fawcett, I can't do that,' and he said, 'George, you've got to do this, we've got you where we want you,' and then he said, 'Well we might give you an extension of time by leasing the plant to us for ten years and not putting down the two-inch surface,' like he spoke before and I plead with him and plead with him and it didn't seem to affect the Board at all, he kept on saying he had me where he wanted me and I would have to be a good dog. I said, 'If that is the Board's attitude,' I said, 'Gentlemen I will do just exactly what you want me to do, if that is what I've got to do. It is not right. It is not fair, and it has never been done in the history before to my knowledge.' I told him in regard to an extension of time that it was a custom all over in all these little cities and there was never a question of giving an extension of time where the work was carried out in half ways decent manner. And he said, 'Now George, if that—if you want to do that, why I will have the city attorney draw up a lease and we will adjourn and have a special meeting tomorrow,' and that meant the fifth of June, 'and you can sign this lease and we will then give you an extension of time.' So that was done.''

The board met the next day, when the city attorney presented said lease, which was executed by appellant, wherein it is recited that the lessor, appellant, ''in consideration of the sum of $10 and other valuable and sufficient considerations'' paid to him by the lessee, City of El Centro, leased for a term of ten years from the date thereof, lots 21, 22 and 23, situate in block 49 of said city, together with the paving plant and all machinery and equipment on said premises used in connection with said paving plant; also one twelve-ton roller, giving and granting unto the lessee the full and unconditional right to the occupation of said prem-

ises and the use thereof at all times during said term of ten years, guaranteeing and warranting the use thereof. It was further provided therein that appellant was to keep said paving plant and all machinery and equipment of every kind and nature used in connection therewith in good repair for operation at all times during said ten-year term at his own expense. It also provided that in the operation of said plant and equipment appellant should have the right at his option to furnish a man approved by the board of trustees to direct the operation of said plant and roller, at his own expense, if he should elect to do so, upon fifteen days' notice from the city of its intention to operate said plant and roller. No consideration was given to appellant for the execution, unless it can be said that the extension granted constituted a good, or sufficient, or valuable consideration. At the time the lease was executed, appellant said to the board that it was a crime to take advantage of him in such a manner and that they held a club over his head and they might as well hang him.

No consideration in fact passed to appellant as a consideration for executing the lease, unless it can be said that the performance of official duty is the subject of barter. Respondent admits in its answer that it refused any extension of time to appellant unless he should execute said lease and that appellant executed the same in order to save himself many thousands of dollars. The board was required by law to act upon the application and in so doing it had no authority to consider matters which were not cognate or germane to the subject matter of the contracts, which was the improvement of the streets described therein and none others. Respondent undertakes to justify its exaction as a legitimate method of recoupment of a loss which it claims to have sustained by reason of inefficient work performed under other contracts made with appellant some two years prior to the execution of said lease. Appellant denies that respondent suffered any loss through his fault. We have no means of determining the merits of those controversies. It is sufficient to say that said former street work was duly accepted and any controversy concerning it has long since been foreclosed. No contractual relation existed between the two transactions. As to this proceeding the prior transactions are *ultra vires.*

■ It is evident from a statement of the case that the lease is void for lack of consideration of any kind known to the law and, further, that it violates the public policy rule of the state. Clearly it was the product of compulsion and the employment of coercive methods by which the exercise of freedom of will, which is always essential to a valid contract, was unquestionably overcome by officers of the city acting under color of official authority. It is not necessary to discuss the question of public policy. The principles of law which condemn the transaction as being in violation of public policy are elemental.

The action was brought within the statutory period prescribed by law and no question of laches is involved.

■ The criterion of damage in such cases as this is the rental value for the term that the owner has been deprived of possession.

Judgment reversed.

Richards, J., Waste, C. J., Curtis, J., Preston, J., Langdon, J., and Shenk, J., concurred.

Rehearing denied.