## McKENZIE CONST. CO. et al. v. CHANOWSKY et al.

### No. 13219.

Court of Civil Appeals of Texas. Fort Worth.

Sept. 6, 1935.

Rehearing Denied Oct. 4, 1935.

Ireland Hampton and Samuels, Foster, Brown & McGee, all of Fort Worth, for appellants.

Martin & Moore and Morris Williams, all of Fort Worth, for appellees.

BROWN, Justice.

In the year 1930, Tarrant County Water Control & Improvement District No. 1 (hereinafter called improvement district) made a contract with appellants, McKenzie Construction Company and Uvalde Construction Company, whereby said construction companies undertook to do the concrete work in the construction of a dam for the purpose of creating an artificial lake, on the Trinity river, known as Eagle Mountain Lake.

It is undisputed that, under the contract with the owner (improvement district), the owner's engineer was the sole judge of the quality of the materials sought to be used in the construction of the dam. The construction companies so bound themselves by contract.

Appellees, who undertook to sell sand and gravel to the said contractors, stipu-

lated, in their contract with the construction companies, as follows: "It is hereby agreed that parties of the first part will take such quantities of sand and gravel as they may require for the said concrete to be constructed by them under their contract with Owner. It is understood, however, that if at anytime in the operation of the gravel pits, and after using reasonable efforts to obtain satisfactory sand and gravel from said premises, the material should fail to meet the requirements and tests of Owner's Engineer for the purposes intended, parties of the first part may cease taking sand and gravel. In which event, parties of the first part shall promptly give notice of the termination of this contract, and shall be liable to party of the second part only for the material actually taken up in the time of such termination."

After entering into the contract for the purchase of sand and gravel from appellees' land, and taking a portion therefrom, appellants were notified by the improvement district's engineer, that the materials were unsuited to use in constructing the dam. In other words, the engineer condemned the materials found on appellees' land. This fact was promptly communicated to appellees by appellants, in the manner provided for in the contract, and no further materials were taken from appellees' land.

Appellees then brought suit against the contractors—the construction companies—appellants here, alleging the contract of purchase; that it was the duty of appellants to use reasonable efforts to produce sand and gravel in sufficient quantities to meet the requirements of the engineer, and that it was the duty of the engineer to use good faith in passing upon the fitness of the materials.

Appellees alleged that the engineer acted in bad faith in condemning the materials and colluded with the contractors in so doing. They alleged, in the alternative, that if mistaken in the allegation of fraud and collusion upon the part of the engineer, nevertheless, the contract provided that the contractors should use reasonable efforts to extract and prepare the materials for use in such a manner as that the materials would meet the requirements of the engineer, but that the appellants wholly failed to thus comply with the provisions of the contract, all of which could have been done.

Appellees sued for a breach of the contract, and alleged their damages at the contract price of the amount of sand and gravel actually used by the contractors in building the dam.

Appellants answered, denying all such allegations, alleging that the engineer condemned the use of the materials on appellees' land; the notice to appellees of such act on the part of the engineer; his good faith in so doing, and his right under the contract to reject the materials.

At the conclusion of the introduction of evidence, the trial court rejected the allegations of want of good faith and collusion upon the part of the engineer in rejecting the materials found on appellees' land, and appellees (plaintiffs below) requested no charge on such issue. This issue was abondoned by the trial court and appellees.

The trial court submitted only two issues to the jury, with instructions, and to which the jury made answers, as follows:

"Special Issue No. 1:

"Question: Do you find from a preponderance of the evidence that the defendants failed to use reasonable efforts to obtain sand and gravel satisfactory to the engineer of the Tarrant County Water Control & Improvement District No. 1, Major Hawley, from the premises of the plaintiffs? Answer 'yes' or 'no.'

"Answer: Yes.

"By the term 'reasonable efforts' is meant such efforts as an ordinary prudent contractor would have used under the same or similar circumstances.

"Special Issue No. 2:

"In the event you have answered the foregoing question in the negative you need not answer this question, but in the event you have answered same in the affirmative, then answer:

"Question: Do you find from the preponderance of the evidence that the defendants could, by the use of reasonable efforts, have produced sufficient sand and gravel of a quality required by the engineer, Major Hawley, to have completed the work of building the dam in question, from the premises of the plaintiffs? Answer 'yes' or 'no.'

"Answer: Yes."

On the verdict so returned, the trial court rendered judgment for appellees

against appellants for $18,277.18, with 6 per cent. interest from June 21, 1934, and appellants have brought the judgment before us for review.

■ Complaint is made of the substance and form of issue No. 2, in that it is multifarious. With this contention we agree.

The issue requires the jury to answer by "yes" or "no" whether appellants, by the use of reasonable efforts, could have produced the quantity of sand and gravel required to construct the dam, and whether appellants, by the use of reasonable efforts, could have produced sand and gravel of a quality required by the owners' engineer to complete the dam. These are issues sharply drawn and strenuously contested by the parties.

Objection having been timely made, by appellants, to the submission of the multifarious charge, the trial court should have segregated the issues.

The quality of the materials (both sand and gravel) is defined in the contract made by and between the improvement district and the construction companies. In our opinion, the terms of the contract should be quoted as a guide to the jury to acquaint them with the meaning of the term "quality," if the trial court uses such term, in his charge, and if the trial court desires to use the description of the materials, in the issues submitted, it is proper to so do, instead of using the term "quality." But specifications for the sand are shown to be separate and distinct from those required for gravel, and the amounts of each necessary to complete the work are different.

The charge is not only multifarious, but it is too broad and allows the jury too much latitude.

There is far more in the power of the engineer to reject materials offered for use in the construction of the dam than one may realize at first blush.

The proper construction of a costly and much-needed public project, such as that out of which this case grew, is more than important; it is vitally necessary.

If the engineer is capable and conscientious, he will take no chances at faulty construction or unsuitable materials.

These construction contracts customarily repose the power of rejection of materials in the owner's engineer, and this is a wholesome custom.

■ If the engineer, in condemning materials offered, acts fraudulently, the contractor is bound by his acts and is not responsible to the owner of the materials, unless there is collusion between the contractor and the engineer.

The seller of the materials has contracted with the construction companies that he will sell his materials, subject, absolutely, to the approval of the engineer. Without the engineer's approval the contractor cannot use the material, and this is made known to the owner of the materials, who contracts in the face of such drastic stipulations.

Thus it appears that where the engineer acts, either arbitrarily or through mistaken judgment, the contractor is powerless to produce the materials from the condemned source, and the owner of the materials is without remedy as against the contractor.

As was said in Ball-Carden Co. v. Ridgell (Tex. Civ. App.) 171 S. W. 509, 512 (writ refused): "Our conclusion is that the gravel appellants contracted to take from appellee's land was not 'usable' under the terms of appellants' contract with the United States government, according to the ruling of the government's engineer, and that therefore appellants, under the terms and conditions of their contract of purchase from appellee, were not bound to take and pay for said gravel."

Referring to the Ball-Carden Case, the following language is used in the opinion in Schoenfeld et al. v. De Puy (Tex. Civ. App.) 58 S.W.(2d) 574, 576: "As far as the contractor was concerned, the material was unusable. It made no difference to the contractor whether it had been rejected in good faith or bad faith, he could not use it in the carrying out of his contract with the government. As long as the contractor did not act in collusion with the government engineer, he could not be made to accept and pay for material which had been rejected by the engineer, even though the engineer had acted in bad faith in doing so."

■ In view of the testimony of the engineer (in substance) that, in his opinion, the material on appellees' land could be produced and prepared suitable for use in the construction of the dam only by washing the condemned portions "with a toothbrush," and that it could not be made suitable for use by any mechanical means known to him, we are inclined to the opin-

ion that this cause should be reversed and rendered for appellants. Martinsburg & P. R. Co. v. March, 114 U. S. 549, 5 S. Ct. 1035, 29 L. Ed. 255.

In view of the fact that the improvement district's engineer condemned the materials taken from appellees' land, went upon the premises, and, after such inspection, ordered the contracting companies not to use such materials, because of the substances found in the materials, which, in his opinion, could not be washed out, and in view of the further fact, that there is no testimony tending to show that the engineer would have approved the materials from appellees' land, even though the contractors had used other and different methods, in an attempt to prepare the materials for use, we are of the opinion that the answers to both issues Nos. 1 and 2 are immaterial.

Without the engineer's approval, the contractors could not use the materials. He was made the sole judge of the fitness of the materials for use on the project. The mere fact that some other engineer, or expert, was of the opinion that the materials on appellees' land were such as measured up to the requirements of the building contract, both as to quality and quantity, does not alter the situation, there being no issue submitted and no finding by the jury that the engineer acted either capriciously or fraudulently and in collusion with the contractors.

Taking the view evidenced by our opinion, we nevertheless feel the necessity of discussing some questions of interest.

The writer does not believe issue No. 1, and its definition, sufficient or fair to appellants, under the facts.

Taking into consideration the specifications laid down for both sand and gravel, and the testimony showing what was necessary to be done to these materials to make them usable, simply to define "reasonable efforts" to obtain sand and gravel "satisfactory to the engineer," as "such efforts as an ordinary prudent contractor would have used under the same or similar circumstances," is not a proper test.

It could not be seriously contended that the contractor was compelled, by his contract with appellees, to resort to unusual and extraordinarily expensive methods and means in order to rid the materials of the clay substances and deposits which rendered them unfit for use, in the opinion of the engineer.

The contract required the construction companies to "wash and screen such sand and gravel with apparatus, mechanical devices and processes of their own, for which party of the second part (appellees) shall in no respect be liable or at any expense whatsoever."

We believe that the language quoted requires the contractors to use nothing more than the usual and ordinary methods in an effort to prepare the materials for use.

The use of the term "ordinary prudent contractor" in connection with the efforts used by the construction companies in producing and preparing the materials for use, when taken in its "every-day" meaning, implies negligence, or want of ordinary care upon the part of the contractor. But the contractors here are not sued upon any theory except a plain, open breach of their contract to purchase materials fit for use.

It appears to us that the contractors, under the terms of the contract and under the circumstances surrounding the parties, were required to employ only ordinary skill, in the use of the usual and customary tools, to extract and prepare the sand and gravel for acceptance by the engineer.

Any other view of the duty resting upon the contractors would necessarily mean that they were compelled to take materials containing an unusually large amount of unfit deposits and employ extraordinary means and extraordinarily expensive processes to extract, wash, and prepare the materials for use.

We cannot agree that this is the law applicable to the case at bar.

Another matter occurs to the writer in the consideration of this cause. If appellees have sand and gravel in paying quantities, suitable to commercial use, they are now in possession of it. There is nothing in the pleadings, and nothing in the record, to indicate that it will be lost, or deteriorate in value, and it occurs to us that if appellees are able, under any theory, to recover against appellants, their measure of damages is the difference between the contract price agreed upon and the value of the same amount of sand and gravel now in place on appellees' land.

For the reasons given, the judgment of the trial court is reversed, and judgment is here rendered for appellants.