## MARTIN BROS. v. STATE.

### No. 8955.

Court of Civil Appeals of Texas. Austin.

Dec. 31, 1940.

Rehearing Overruled Jan. 22, 1941.

Harris & Harris, of Austin, for appellant.

Gerald C. Mann, Atty. Gen., and Geo. W. Barcus, Pat Coon, Richard H. Cocke, and Ocie Speer, Asst. Attys. Gen., for appellee.

BAUGH, Justice.

The parties will be designated as in the trial court.

The plaintiffs, road contractors, under permission granted by Resolution of the Legislature to do so, sued the State for $10,-950.64, on a contract for the construction of approximately 15 miles of State Highway in Liberty County. The claim asserted consisted of two items: One for $3,-090.64, claimed as due them, under the terms of the contract, for dirt moved by them in the construction of the road, for which the State refused to pay; and the other for $7,500 additional compensation

by way of damages for extra work made necessary because of changes made by the State Highway Engineer in the plans and specifications upon which bids were asked by the State, and after the contract was entered into. The changes so made by the engineer were alleged to have made the performance of the contract by appellants more onerous and expensive than the original contract required. Trial was to a jury, but at the close of plaintiffs' evidence, upon the State's motion, a verdict was instructed against the plaintiffs and judgment rendered that they take nothing; hence this appeal.

The first item relates entirely to the actual quantities of dirt moved by the contractors in performing their contract. Two classes of excavation were involved: "Common roadway excavation" and "Borrow," —the latter being dirt necessary to be taken from drainage ditches and placed in the fill or roadway proper. In the plans and specifications for the job prepared by the Highway Engineer, and furnished prospective bidders upon which to make their bids, the amount of "common roadway excavation" necessary to be made was estimated at 146,917 cubic yards; and that of "Borrow" at 46,220 cubic yards. Under their bid and the contract, the plaintiffs were to be paid 11 cents per cu. yd. for moving the former; and 14 cents per cu. yd. for moving the latter class of material. The job was completed and accepted by the State, and, according to the final estimate of the Highway Engineer, plaintiffs moved 155,-256 cu. yds. of "common" excavation and 43,940 cu. yds. of "Borrow", for which they were paid at the contract price. Plaintiffs alleged, however, and offered evidence to show that they had in fact moved 177,476 cu. yds. of "common" and 47,940 cu. yds. of "Borrow", for which they were entitled under the contract to be paid, making the sum claimed as still due them for actual work done under the contract on this item of $3,090.64.

The other item of $7,500 sustained by pleading and proof was that in the plans and specifications, drawn in detail by the Highway Engineer and furnished bidders as a basis for their bids, there were designated on the entire 15 miles of roadway, only 26 trees to be left between the roadway and the edge of the right of way, and these were specifically located on the plans. It was shown that in response to a ques-

tionnaire required by the Highway Department to be filled out by the bidder, and treated as a warranty, disclosing the character of machinery the bidder had, his ability to perform such contract, and the manner in which he proposed to perform it, the plaintiffs recited and advised the Highway Department, which was the basis for their low bid on the project, that they would do the grading and drainage work with heavy machinery consisting of an elevated grader and drag line. After the contract was executed and plaintiffs had begun work, the Highway Engineer caused to be designated and marked 334 other trees situated alongside the roadway to be left and directed plaintiffs not to remove them. Because of their number and location on the right of way, it then became impossible for plaintiffs to use their heavy machinery in moving the dirt required to be moved, of which fact the Highway Engineer was apprized and well knew; and that because of such change of plans by the engineer, and to meet his instructions and demands plaintiffs were then compelled to do most of such work with plows and fresnoes drawn by mules, to remove dirt from around such trees so as not to injure them, thus necessitating more laborers and much heavier expense to the plaintiffs than the original plans and methods of work required or called for; and that as a result, because of the change made by the engineer, the plaintiffs were required to expend, in performing their contract, at least $7,500 more than would have been necessary had the plans and specifications been left as they were when the contract was made.

In addition to general and special exceptions, and general and special denials, the State defended on the grounds that the matter of leaving or removing trees from the right of way came within the portion of the contract relating to grubbing and clearing the right of way contracted for by the acre and for which the plaintiffs had already been paid in full. Also that the contract provided that all disputes between the parties should be decided by the engineer whose decision would be final and binding; and, in effect, that the engineer having decided the matters here involved against the plaintiffs, they are without recourse or remedy.

The State Highway Department's Standard Specifications attached to and made a

part of the contract contained, among numerous other provisions, the following:

"5.1. *Authority of Engineer.* The work will be done under the supervision of the Engineer, to his satisfaction, and in accordance with the contract, plans and specifications. The Engineer will decide all questions which may arise as to the quality or acceptability of materials furnished and work performed; the manner of performance and rate of progress of the work; the interpretation of the plans and specifications; and as to the acceptable fulfillment of the contract on the part of the Contractor. His decisions will be final and he will have executive authority to enforce and make effective such decisions and orders as the Contractor fails to carry out promptly.

"5.2. *Engineer as Referee.* The Engineer will act as referee in all questions arising under the terms of the contract between the parties thereto and his decisions shall be final and binding."

■ These provisions thus become a part of the contract, and since plaintiffs, in so far as the first item above indicated is concerned, sued upon the contract they necessarily must be held to have affirmed it. If we properly understand the plaintiffs' contention it is that this attempted delegation of such authority to the engineer is void because it undertakes to vest in him judicial authority.

■ It is now settled law, however, that such a provision in a building contract is valid and binding. As stated in 9 Am. Jur., § 36, p. 26: "It may be stated generally that any stipulation whereby the parties constitute an architect or engineer the final arbiter between themselves, as to any matter connected with the contract, makes the decision of the architect or engineer conclusive as to such matter."

■■ This rule seems to be universally recognized, except, perhaps, in Indiana. See numerous annotations in 54 A.L.R. 1255 et seq.; supplemented by annotations in 110 A.L.R. 137 et seq.; 4 Tex.Jur., § 10, p. 718; 7 Tex.Jur., § 14, p. 554; Schoenfeld v. De Puy, Tex.Civ.App., 58 S.W.2d 574; McKenzie Const. Co. v. Chanowsky, Tex.Civ.App., 86 S.W.2d 480. In so far as the engineer's decisions relate to the interpretation of the plans and specifications, and to the proper performance of the work, he acts in his capacity as an engineer. But as to his decisions "as referee" in contro-

versies between the parties he acts in the capacity of an arbitrator. 4 Tex.Jur., § 7, p. 715. And his decisions in either event, where, as here, he has by agreement been clothed with power to make them, are conclusive on both parties to the contract, "in the absence of a showing of partiality, fraud, misconduct or gross error." 4 Tex. Jur., § 22, p. 686, and cases cited in footnote. Nowhere in plaintiffs' pleadings, however, do they allege any of these grounds as reasons for setting aside the findings of the State Highway Engineer of the quantities of materials moved by them; nor that he failed to exercise an honest judgment in the matter. As to this item sued for, therefore, the plaintiffs neither pleaded nor proved sufficient grounds for setting aside the engineer's decision.

■ However, the other items sued for, we think, presents a different situation. It is true that the standard specifications above referred to provided: "4.3. Changes and Alterations. The Engineer will have the right to make such changes and alterations in the plans or in the quantities of the work, as may be considered necessary or desirable, and such changes and alterations shall not be considered as a waiver of any condition of the contract, nor shall they invalidate any of the provisions thereof. The Contractor shall perform the work as increased or decreased and no allowances will be made for anticipated profits. When such changes and alterations increase or decrease the quantity of work to be done or of materials to be furnished under any item in excess of twenty (20%) per cent then either party to the contract, upon demand, shall be entitled to a revised consideration upon that portion of the work above or below twenty (20%) per cent of the quantity stated in the proposal; such revised consideration to be determined by special agreement or as is hereinafter provided under 'Extra Work.' "

■ But it is clear, we think, that changes so authorized could not be made by the engineer which would alter the terms of the contract as made between plaintiffs and the State. Manifestly, the changes contemplated within the above-quoted authorization related only to details in the performance of the contract and did not authorize the engineer, after the contract was executed, to so materially alter its provisions as to require the contractors to discharge burdens which they did not contract

to assume. To hold otherwise would in effect be to authorize the engineer to impose upon the contractors burdens they had never contemplated nor agreed to when they made their bids and obligated themselves to assume by entering into the contract. In brief, it would authorize the engineer to alter the material terms of a written contract already made.

In the instant case when the plans and specifications were submitted to the bidders they showed in detail the work to be done. Only 26 designated trees were to be left on the right of way. These were so located and staggered as to allow the use by a bidder of heavy machinery in grading, draining, and moving materials into place; instead of doing so with teams, plows, and fresnoes, a more expensive method. By questionnaire the State required the bidder to disclose to it what equipment he had with which to do the work, and how he proposed to do it. In reply to this, all of which became material to the contract, plaintiffs advised the State of their equipment, that is, elevator machinery and drag lines, and that they proposed to do the work with that equipment. The State was therefore apprised not only of the ability of the contractors to do the work but also of the basis of their bids, all of which was a part of the consideration for their contract. They not only proposed to do the work, therefore, but to do it with the machinery made known to the State. By the use of such machinery, which they could have used under the plans submitted to them, and on which their bid was made, they could have constructed the road in a much shorter time and at less expense than was necessary by the use of teams, fresnoes, etc. These facts were, of course, known to the State when the contract was made; and it was made in the light of such facts.

If, therefore, as pleaded and proven, after the contract had been signed and the rights of the parties fixed thereunder, the engineer so altered the plans and specifications as to require the contractor to leave on the right of way 360 trees instead of 26, and by so doing made it impossible for the contractor to use the machinery he proposed, with full knowledge of the State, to use; and required him, because of such changes, to perform the work in a different and more expensive manner than was required or necessary when plaintiffs made their bids and signed the contract; the net result of such changes, under the circumstances, would be a material alteration of the terms of the contract itself. This the engineer had no authority to do. Consequently, any decision by him which resulted in changing the terms of the contract was clearly beyond the scope of the authority vested in him by the contract, and would not be final and conclusive on the plaintiffs. Galveston, H. & S. A. R. Co. v. Henry & Dilley, 65 Tex. 685; Galveston, H. & S. A. R. Co. v. Johnson, 74 Tex. 256, 11 S.W. 1113; City of Galveston v. Devlin, 84 Tex. 319, 19 S.W. 395; McDaniel v. City of Beaumont, Tex.Civ.App., 92 S.W.2d 552, 560; 4 Tex.Jur., § 7, p. 715; 9 Am.Jur., § 36, p. 27; Ann. in 54 A.L.R. 1264. If, therefore, the changes made in the plans by the engineer required of the contractor additional labor and expense beyond that provided for in the contract, the contractors were entitled to be compensated therefor as for extra work. 7 Tex.Jur., §§ 64 and 65, pp. 626 et seq.

Nor do we think, as urged by the State, that the matter of leaving additional trees on the right of way was included within, and concluded against the plaintiffs by, the terms of the contract relating to "Clearing and Grubbing." That was a separate section of the contract relating to clearing the right of way prior to beginning construction proper, for which the contractors were to be paid by the acre. It is clear, we think, that the control given the engineer over this phase of the preliminary work would not authorize him to exercise his judgment in such manner as to materially change the other provisions of the contract relating to the construction work to follow. The clearing was but incidental and preliminary to the principal undertaking to follow,—the construction of the road.

Having reached the conclusion that the trial court erred in directing a verdict against the plaintiffs, the judgment is reversed and the cause remanded for another trial.

Reversed and remanded.