## GOODRUM v. STATE et al.
### No. 11293.

Court of Civil Appeals of Texas. Galveston.

Jan. 8, 1942.

Rehearing Denied Jan. 29, 1942.

and Ocie Speer, Asst. Attys. Gen., for appellees.

MONTEITH, Chief Justice.

This suit was instituted by appellant, John W. Goodrum, to recover certain sums alleged to have been withheld by appellees, the State of Texas and the State Highway Commission, as penalties, and for damages, growing out of two certain contracts between appellant and the State Highway Department for the construction of a stretch of highway in Wilson and Gonzales Counties, Texas.

Appellant alleged that he had completed said work in accordance with the terms of the contracts and that the completed job had been accepted by appellees but that they had withheld the sum of $4,175 from him by way of penalties; that while said projects were not completed within the number of days specified in the contracts, the delays for which the penalties in question were charged were caused by the unreasonable and arbitrary restrictions placed upon him by the Highway Department's resident engineer.

Appellees answered by exceptions, a general demurrer, and a general denial. They specially pled, in bar of appellant's recovery, a supplementary agreement embodied in a letter from appellant to the division engineer of the State Highway Department, wherein appellant is alleged to have stipulated his withdrawal of all claims for any extension or credit in working time except as covered by previous supplemental agreements and to have compromised the claims forming the basis of appellant's suit and to have adjusted the difference between the parties with respect thereto.

In answer to this pleading appellant admitted that he had signed the letter in question. He alleged that he had been forced to sign said letter; that it was done under duress and was not his voluntary act, and that it was without consideration.

In answer to special issues submitted, the jury found that the resident engineer of the State Highway Department had caused delays in the completion of said contracts by three specific acts; that each of these acts was arbitrary and unreasonable, and that each of them had caused the delays in question in the completion of the jobs. They found the specific number of days each of such acts had delayed appellant in the final completion of the job. The jury also found

Dibrell, Mosheim & Campbell, of Seguin, and White, Taylor & Chandler, H. Grady Chandler, and David L. Tisinger, all of Austin, for appellant.

Gerald C. Mann, Atty. Gen., and Cecil C. Cammack, Pat Coon, Richard H. Cocke,

that appellant was under duress at the time he signed the letter pled in bar of his cause of action. Both sides filed motions for judgment. Appellees filed a motion for judgment non obstante veredicto. The court, after hearing such motions, refused to enter judgment for appellant on the verdict of the jury for all penalties alleged to have been withheld from him and rendered judgment in his favor for the sum of $325 as being a double penalty charged by appellees for 13 days overtime.

This suit was instituted under authority granted appellant by the Legislature to sue the State and the State Highway Department in the district court of Travis County, for the recovery of certain penalties charged against him for overtime in the noncompletion of his contract for the construction of the highways in question, and for amounts claimed to be due him for over and under hauls which had not been allowed or paid by the Highway Commission.

The contracts in question between appellant and the State Highway Commission were executed on March 19, 1934. They provided that the time set forth in the proposal for the completion of the work should be an essential element of the contract; that the contractor should be charged the amount per day provided in the contract for each day any work should remain uncompleted, after the expiration of the working days specified therein, and that such sum would be deducted from the money due or to become due the contractor, not as a penalty, but as liquidated damages and added expense for engineering supervision.

The contracts further provided that the work should be done under the supervision of an engineer of the Highway Department to his satisfaction and in accordance with the contract, plans and specifications, and that the engineer should decide all questions which might arise as to the quality or acceptability of materials furnished and work performed; the manner of performance and rate of progress of the work; the interpretations of the plans and specifications; and as to the acceptable fulfillment of the contracts on the part of the contractor, and that his decisions should be final and that he should have executive authority to enforce and make effective such of his decisions and orders as the contractor failed to carry out promptly.

On October 10, 1934, when the job was nearing completion, appellant executed and delivered to J. G. Rollins, Division Engineer of the State Highway Department at San Antonio, Texas, a letter in which he agreed to withdraw all claims for any extensions or credit in working time except as covered by a previous supplemental agreement. The letter in question, omitting its formal parts, reads:

"Dear Sir:

"It appearing that the supply of sledgestone from pits 1 to 4 inclusive is going to be inadequate to complete the above projects and that there is a supply near Gillett which appears to be sufficient to complete the work. The source at Gillett will be of somewhat longer haul. If it will be satisfactory with the State for us to use the material near Gillett I agree to the following:

"1. To secure the remainder of the sledgestone from the source near Gillett, if available, provided the material is satisfactory to the state and the material can be secured from the property owner; and secure the remainder of the crushed sandstone from pits 1 to 4.

"2. To accept the unit bid price for all over run or under run in quantities for the following items: Stripping, Material haul add ¼ mile, Blading Embankment, Mortar Rubble Masonry, Corrugated Metal pipe 24.

"3. To accept the quantities for stripping for pits 1 to 4 inclusive as now considered as strippings. This is not to include waste piles of mixed rock. The stripping all ready paid for on force court order is to continue as a force account item.

"4. All material considered as stripping according to specifications at the proposed Gillett quarry or any future approved quarry is to be placed in a separate pile and measured and paid for as stripping.

"5. To withdraw all claims for any extension or credit in working time, except as covered by any previous supplemental agreement. It is understood that no time will be charged for the delay caused by moving to the Gillett proposed quarry side."

Appellees contend that the judgment of the trial court in their favor, rendered non obstante veredicto, was proper in view of the supplemental contract of release, represented by this letter wherein appellant is alleged to have discharged all of the claims here involved. Appellees further contend that no facts were pled by appellant which

would have authorized the submission by the court of any issue respecting duress.

Appellant admitted that he had signed the letter in question when practically all of the time allowed under his contract had expired. He alleged that he had obtained all of the usable material from pits Nos. 1 to 4, inclusive, from which he had been required by appellees' resident engineer to secure material for the job and that said engineer had arbitrarily refused to inspect or approve, as a source of material, another pit from which ample material could be secured unless and until he signed the letter in question; that said resident engineer had informed him that if he would sign said letter he would be permitted to move to the new pit No. 5, but that if he refused to do so he would have to try as best he could to obtain sufficient material to complete said job from the material pits from which he had already removed all usable material. He alleged that if he had not been permitted to move to pit No. 5 from which he could procure the required material he would not have been able to complete the job under his contract and that he would have become bankrupt in that event; that by reason of such duress and force exerted upon him by appellees' agents and engineer he had signed said letter, not voluntarily and of his own free will, but under compulsion and necessity.

The court submitted the following special issue No. 17, with the accompanying instruction to the jury:

"Do you find from a preponderance of the evidence that the plaintiff, John W. Goodrum, was under duress when he signed the letter described as defendant's Exhibit No. 5, dated October 10, 1934? Answer 'Yes' or 'No'.

"By duress as used in the foregoing issue is meant any coercion of another, either mental, physical, or otherwise, causing him to act contrary to his own free will or to submit to a situation or condition against his own volition or interest."

The jury also found, on sufficient evidence, in answer to special issues submitted, that appellant could not have obtained sufficient sledgestone material to complete the job from pits Nos. 1 to 4, inclusive, to continue the sledgestone operations on October 10, 1934; that said resident engineer had refused to permit appellant to open up any source of said stone material other than pits 1 to 4, inclusive, prior to October 10, and in answer to said special issue No. 17, that appellant was under duress when he signed said letter dated October 10, 1934.

█ It is the settled law in this state that duress of property cannot exist without there being a threat to exact some illegal act which the threatening party has no legal right to do, some illegal exaction or some fraud or deception. To constitute duress, the restraint must be imminent and it must be such as to destroy free agency of the threatened party without there being a present means of protection. Ward v. Scarborough, Tex.Com.App., 236 S.W. 434, and cases there cited.

█ The restraint, intimidation or compulsion is sufficient to constitute duress if it induces the particular person claiming the duress to perform some act, which he is not legally bound to do, contrary to his will.

Our courts have drawn a distinction between cases where, although the claim asserted or the demand made is wrongful or unlawful, the party asserting the claim or making the demand is compelled to resort to the courts to enforce it, and the cases where the party making such demands possesses, or is supposed to possess, the power to enforce such demand against the property of the party claiming duress without resort to the courts.

The latter class includes cases where one party has possession of the property of another and refuses to surrender it except upon compliance with a wrongful demand and the delay of an action to recover it would cause great or irreparable injury, cases where one party is invested with the power to sell or dispose of the property of another and threatens to exercise such power wrongfully or oppressively in such a way as to sacrifice the property or to inflict great or irreparable injury in the event the demand is refused, and other cases where one party may be in a position to inflict in various ways great or irreparable injury to the property or the property interests of another if compliance with the unlawful demand is refused.

█ In this latter class of cases it is held that duress may exist although some measure of relief or redress might have been secured by an action in the courts. Ward v. Scarborough et al., supra, and cases there cited.

█ This rule is supported by the great weight of authorities from other jurisdictions. It is followed by the Supreme Court of the State of California, in the case of

Oswald v. City of El Centro, 211 Cal. 45, 292 P. 1073, 71 A.L.R. 899, in which the facts are almost identical with those in the instant case. Under above authorities appellees' contention in this regard must be overruled.

Appellees contend that, since the contract between appellant and the Highway Department provided that for each day that any work should remain uncompleted on said projects, after the expiration of the working days specified therein, the specified amount per day would be deducted from the money due the contractor, not as a penalty, but as liquidated damages and expenses, and that the judgment rendered by the trial court in their favor was proper, for the reason that House Bill 945, Laws 1935, c. 227, under which this suit was brought, only authorized appellant to sue to recover penalties and claims for over and under hauls and did not authorize him to sue for liquidated damages. This contention cannot be sustained.

House Bill 945 authorized appellant to bring suit against the State of Texas and the Texas Highway Department "for the recovery of certain penalties" charged to him for overtime in the noncompletion of said projects and for amounts claimed to be due him "as contractor for over and under hauls, which have neither been allowed nor paid."

It is evident from the language of said bill that it was the intention of the Legislature, in enacting the legislation, to permit appellant to sue for the recovery of certain moneys withheld by the Highway Department from the amount due him under the terms of his contract for overtime in the noncompletion of said projects, and that the term "penalties", as used in the bill, is descriptive of the items on which the charges are based since the bill expressly recites that specific sums had been withheld from appellant for which he was therein authorized to sue.

It has been uniformly held that whether a sum agreed to be paid as liquidated damages for the breach of a contract shall be considered as such or as only a penalty depends on the intention of the parties gathered from a full view of the provisions of the contract in which they expressed their intentions, the surrounding circumstances and the circumstances of the agreement. Ferguson v. Ferguson, Tex. Civ.App., 110 S.W.2d 1016.

Further, it is the settled law that, although a sum be named as liquidated damages, the courts will not so treat it unless it bears such proportion to the actual damages sustained that the damage may reasonably be presumed to have been arrived at from fair estimation by the parties of the compensation to be paid for the prospective loss. Collier v. Betterton, 87 Tex. 440, 29 S.W. 467.

In the instant case, there is no showing that damages of any kind were suffered by the State and we cannot presume that the damages, if any were sustained, were proportionate to the sums charged to appellant as liquidated damages and engineering expenses.

Appellees contend that the judgment of the trial court was proper in view of the provisions of said contracts which made the resident engineer employed by the State Highway Department referee in all questions arising under the terms of the contracts and provided that his decisions should be final and binding. They base this contention on the proposition: (1) that in order for appellant to recover, the engineer's decisions must be shown to be in bad faith; (2) they contend that no bad faith was shown in the instant case; and (3) that, even assuming that bad faith was shown, the State's rights would not be affected thereby for the reason that the sovereign is not liable for the tortious acts of its servants and that the resident engineer employed by the Highway Department was not a contracting agent. These contentions cannot be sustained under the facts in this case.

It is the settled law that where a builder and a contractor, by their written agreement, make an architect or an engineer the judge of the proper performance of a contract, neither party can avoid his conclusion on the subject without showing that the other party acted capriciously, arbitrarily, or fraudulently. Daniels v. Franklin, Tex.Civ.App., 233 S. W. 380; Schoenfeld v. DePuy, Tex.Civ. App., 58 S.W.2d 574; Brin v. McGregor, Tex.Civ.App., 45 S.W. 923; Neblett v. McGraw & Brewer, 47 Tex.Civ.App. 207, 103 S.W. 1113; Garrett v. Dodson, Tex.Civ. App., 199 S.W. 675; McKenzie Construction Co. v. Chanowsky, Tex.Civ.App., 86 S.W.2d 480, 483.

The word "arbitrary" has been used on numerous occasions by our courts

in defining the type of conduct which would prevent the decision of an architect or engineer from becoming final and has been expressly held to contemplate "bad faith". It is defined as failure to exercise an honest judgment. Friede v. White Co., D.C., 244 F. 272. It is held that the "word 'arbitrarily' means, in an arbitrary manner, and 'arbitrary', as defined in the Standard Dictionary, means: 'Fixed or done capriciously or at pleasure; without adequate determining principle; not founded in the nature of things; nonrational; not done or acting according to reason or judgment; depending on the will alone; absolutely in power; capriciously; tyrannical; despotic.'" King v. Falls County, Tex.Civ.App., 42 S. W.2d 481.

▆▆▆ Appellant in the instant case alleged that the job was not completed within the number of days specified in the contract because of unreasonable and arbitrary restrictions placed on him by the resident engineer employed by the Highway Department. The jury found, on what we deem to be sufficient evidence that R. A. Bossy, the resident engineer, employed by the Highway Department, caused the delays in the completion of the job by three specific acts; that each of these acts was arbitrary and unreasonable and that each of them delayed appellant in the final completion of the job. R. A. Bossy, the resident engineer, whose arbitrary and unreasonable rulings were alleged to have caused the delays in question, did not attempt to explain or justify the restrictions complained of by appellant. He denied that the restrictions had been made by him.

▆▆▆ Appellees' contention that the alleged bad faith and arbitrary acts of said resident engineer cannot affect the State's rights for the reason that such conduct is tortious and that such tortious acts cannot be chargeable to the State because the engineer, under the contract, had no contractual powers cannot be sustained for the reason that, under the contracts, it is expressly provided that there should be no liability upon the engineer or his assistants since they were the agents and representatives of the State.

The contract provided, among other duties, that it should be the duty of the resident engineer and his assistants to supervise the work to be done to his satisfaction; to decide all questions arising as to materials, performance, progress, etc.; that

he should be a referee between the parties; that he should control all materials and approve sources of supply and other duties set out in the contracts covering the smallest details. All discretion was vested in the engineer.

Item 7, Subd. 7.13 of the contracts read:

"Personal Liability of Public Officials. In carrying out the provisions of the contract, or in exercising any power or authority granted thereunder, there shall be no liability upon the engineer, or his authorized assistants, either personally or otherwise, as they are the agents and representatives of the State."

▆▆▆ While it has been held under certain states of facts that the sovereign is not liable for the tortious acts of its servants, this contention cannot be sustained under the facts in the instant case.

▆▆▆ It is, we think, the law in this state that in all contracts for building or engineering work which make an architect or an engineer the judge of the proper performance of the contract,[1] the performance of the contract will be excused if the failure to perform is due either to collusion with or improper control over the architect or engineer, or even if, without any collusion with or improper control on the part of the promisor or builder, the architect or engineer fraudulently or maliciously or otherwise prevents the proper performance of the contract. Texas Midland R. R. Co. v. Monroe, 110 Tex. 97, 216 S.W. 388; Shirley v. Waco Tap Railway Co., 78 Tex. 131, 10 S.W. 543; Williston on Contracts, Rev.Ed., Vol. 3, p. 1952, § 677; Maurer v. School District, 186 Mich. 223, 152 N.W. 999; Sperry v. Fanning, 80 Ill. 371; Beattie Mfg. Co. v. Heinz, 120 Mo.App. 465, 97 S.W. 188.

The precise question urged by appellees in the instant case, in that the United States was a party to the suit, is answered contrary to appellees' contentions by the case of the United States v. United Engineering & Constructing Co., 234 U.S. 236, 34 S.Ct. 843, 58 L.Ed. 1294. There the contractor sued the United States claiming, among other things, $6,000 which the Government had withheld for liquidated damages for delay. The court allowed a recovery of the full amount, even though part of the delay was caused by the Contractor on the theory that, even though the sums were held as liquidated

damages and not as a penalty, the Government would withhold no part of such sums if it contributed to the delay in any manner.

In the case of Smith v. City of Tahlequah, 117 Okl. 204, 245 P. 994, 995, by the Supreme Court of Oklahoma, a case even more in point than United States v. United Engineering & Construction Co., supra, a contractor sued the city of Tahlequah to recover liquidated damages withheld by the city for delay caused partly by the contractor and partly by "the fact that the engineer [for the City] in charge of * * * the work requested plaintiffs to do certain additional work in connection with the installation of the machinery which plaintiffs were not required to do under the terms of the contract." The court allowed the contractor a full recovery, under the rule that once the defendant has caused a delay he cannot complain of delays by the contractor in so far as the liquidated damages clause is concerned.

In the instant case the resident engineer employed by the State Highway Department was designated by the State to supervise appellant's work. There was an implied promise by the State that the engineer would supervise the job in a manner which would not hinder appellant in the performance of his obligations. The jury having found on sufficient evidence that said engineer did hinder appellant in the completion of the contract and that the acts complained of were due to his arbitrary and unreasonable conduct, we think that equity should not and will not permit the State to withhold from appellant any part of the contract price for said work, either as penalties or damages, for delays in the completion of the work caused by arbitrary restrictions shown to have been imposed upon appellant by the agents of appellees.

The case having been fully developed in the trial court and the jury having found all facts alleged by appellant and necessary to his recovery in appellant's favor, the judgment of the trial court for the sum of $325 found to have been a double penalty charged by appellees, is affirmed. The judgment of the trial court denying appellant recovery for the remainder of the penalties withheld from him upon the completion of the job is reversed and judgment is here rendered in favor of appellant for the additional sum of $3,850, making a total recovery in favor of appellant in the sum of $4,175. It is so ordered.

Affirmed in part and in part reversed and rendered.