Dr. Charles V. MANES, Appellant,

v.

DALLAS BAPTIST COLLEGE, Appellee.

No. 20974.

Court of Appeals of Texas, Dallas.

July 6, 1982.

Rehearing Denied Aug. 23, 1982.

**144**

James A. Johnston, Johnston & Larson, Dallas, for appellant.

William A. Smith, Smith, Smith & Florsheim, Dallas, for appellee.

Before AKIN, SPARLING and FISH, JJ.

AKIN, Justice.

Dr. Charles Manes appeals from a summary judgment granted against him in his suit for breach of his employment contract with Dallas Baptist College. Dr. Manes was discharged by the College's Board of Trustees for alleged insubordination. Dr. Manes then sued alleging that he was terminated without cause, in breach of his employment contract. The College moved for summary judgment, which was granted, on the ground that the contract provided for common law arbitration. Because the trial judge improperly construed the employment contract, we reverse the judgment and remand for trial.

The crucial language in the contract provided:

> Tenured faculty may be terminated for incompetence or moral turpitude or insubordination or unethical conduct or financial exigency of the college, and then only after due process.
>
> . . . .
>
> In every case of termination of a tenured faculty member the faculty member shall be informed in writing of the specific circumstances upon which his/her termination is based. The faculty member will be provided the opportunity to appeal to the Campus Administration. *The action taken by the Board of Trustees shall be final.* [Emphasis added]

Our review of this summary judgment is limited to deciding what interpretation to give the provision that "the action taken by the Board of Trustees shall be final." The College urges that "final" means not subject to judicial redetermination; in other words, this language was in effect an agreement for common law arbitration which precludes litigation of the issues decided in arbitration by the college trustees. Dr. Manes contends, on the other hand, that "final" means only that the trustee's action was the last step in the College's internal grievance procedure before he could resort to the courts but that it did not otherwise affect his right to judicial review. We hold that the contract does not provide for common law arbitration but that whether grounds existed for termination is subject to judicial redetermination. Thus, summary judgment was improperly granted.

Summary judgment is proper only where the record establishes a right thereto as a matter of law. *Gonzales County Sav. and Loan Ass'n. v. Freeman,* 534 S.W.2d 903, 905 (Tex. 1976); *Gibbs v. General Motors Corp.,* 450 S.W.2d 827, 828 (Tex. 1970). Further, the movant must demonstrate that no genuine issue of material fact stands in the way of judgment for movant. *Torres v.*

*Western Casualty & Surety Co.,* 457 S.W.2d 50, 52 (Tex. 1970). The movant must establish his entitlement to a summary judgment on the issues expressly presented to the trial court by conclusively proving all essential elements of his cause of action or defense as a matter of law. Summary judgments must stand on their own merits. *City of Houston v. Clear Creek Basin Authority,* 589 S.W.2d 671, 678 (Tex. 1979). Because the College sought summary judgment on the ground that the contract provided for common law arbitration, summary judgment was proper only if the College established as a matter of law that the contract provided for common law arbitration and that the dispute had been arbitrated according to the contract.

Arbitration is generally favored by the courts and every reasonable presumption will be indulged to uphold arbitration proceedings. *Carpenter v. North River Insurance Company,* 436 S.W.2d 549, 553 (Tex. Civ. App.—Houston [14th Dist.] 1968, writ ref'd n.r.e.); *Admiral Motor Hotel of Texas, Inc. v. Community Inns of America, Inc.,* 389 S.W.2d 694, 700 (Tex. Civ. App.—Tyler 1965, no writ). The agreement must, however, satisfy the common law requirements for arbitration. *See L.H. Lacy Co. v. City of Lubbock,* 559 S.W.2d 348, 352 (Tex. 1977); *Murray v. U.S. Fidelity & Guaranty Co.,* 460 S.W.2d 212, 214 (Tex. Civ. App.—Dallas 1970, writ ref'd n.r.e.). The arbitration agreement need not be in any particular form, but no party is under a duty to arbitrate unless by clear language he has so agreed, and it must clearly appear that the intention of the parties was to submit their dispute to the arbitrators and to be bound by that decision. 6 C.J.S. Arbitration § 14 (1972).

"Arbitration" is generally a contractual proceeding by which the parties to a controversy, in order to obtain a speedy and inexpensive final disposition of the disputed matter, select arbitrators or judges of their own choice, and by consent, submit the controversy to these arbitrators for determination. *Alderman v. Alderman,* 296 S.W.2d 312, 315 (Tex. Civ. App.—San Antonio 1956, writ ref'd.); *see* 6 C.J.S. Arbitration § 2 (1975); 5 Am. Jur. 2d Arbitration and Award § 1 (1962); 6 Tex. Jur. 2d Arbitration and Award § 1 (1959). The essence of arbitration is the submission of the controversy to a third party. *See Parrott v. Brotherhood of Railroad Trainmen,* 85 S.W.2d 306, 308 (Tex. Civ. App.—Texarkana 1935, writ ref'd) (contractual rights cannot be taken away by any system of arbitration whereby one of the parties does the arbitrating); 16 Williston, Contracts § 1918 (3d. ed. 1976) (arbitration is consensual means for settlement of disputes by reference to a private party); 6 C.J.S. Arbitration § 58 (1972) (arbitrator is a judge of parties' own choosing); 5 Am. Jur. 2d § 84 (1962) (arbitrator is a private, extraordinary judge chosen by the parties).

Dr. Manes' employment contract provided for a hearing before the College's Board of Trustees. If the Board of Trustees was considered to be an arbitrator, the effect would be to allow one of the parties to act as judge in its own case. Such a result is totally inconsistent with the theory of arbitration. The contract plainly establishes only a procedure for internal administrative remedies and cannot be considered as an agreement to arbitrate. Summary judgment was thus improper because the College failed to establish as a matter of law that the contract provided for common law arbitration.

Additionally neither party pleaded ambiguity of the contract in the trial court. If a contract is so worded that it can be given a definite and certain legal meaning, it is not ambiguous. When a contract is susceptible to a legal meaning, construction of the written instrument is one of law for the court. *Loe v. Murphy,* 611 S.W.2d 449, 452 (Tex. Civ. App.—Dallas 1980, writ ref'd n.r.e.); *Gibson v. Bentley,* 605 S.W.2d 337, 339 (Tex. Civ. App.—Houston [14th Dist.] 1980, writ ref'd n.r.e.). Since allowing the College to act as an arbitrator in its own dispute is inconsistent with the theory of arbitration, the College's contention that the contract provides for common law arbitration constitutes an unreasonable reading

of the contract. The only possible reading of the contract is that it establishes a procedure for administrative review of disputes between the College and its employees. This allows for possible resolution of disputes without the necessity of judicial intervention, but it does *not* preclude judicial intervention. Dr. Manes was required to exhaust these administrative remedies before he could seek a judicial determination of his complaint, and he did so. Because the contract provided only for a procedure for administrative review and the College failed to establish as a matter of law that the parties entered into common law arbitration, the summary judgment must be reversed and the cause remanded.

SPARLING, Justice, dissenting.

I cannot agree that a reasonable construction of the employment contract contemplates a judicial determination of the merits of appellant's termination. Accordingly, I dissent.

This case does not concern the judicial review of a public institution as a matter of administrative law, but rather the review of the action of a private institution as a matter of contract law. Academic freedom does not inherently require a more liberal construction of rights under a teacher's contract of employment, than the construction of contractual rights of any other wage earner. "Tenure" is a status defined by contract, vesting only those rights provided by contract and no right to arbitration exists without language so specifying.

Majority implies that the summary judgment was granted on the ground that the contract provided for common law arbitration, yet "arbitration," by word or inference, is no where mentioned by the court in the judgment.[1] Majority presumes that the

summary judgment must have been based upon a finding of arbitration because the College's Motion for Summary Judgment, in one part, referred to the action of the Executive Committee of the Board of Trustees as "common law arbitration." The word "arbitration" was used when the College urged the court to construe the word "final" in the employment contract as precluding a judicial determination of insubordination. I would hold that the College properly presented the issue of the construction of the employment contract to the court by Motion for Summary Judgment, although it was improperly labelled as "arbitration." In *Albritton v. Henry S. Miller Co.,* 608 S.W.2d 693, 695 (Tex. Civ. App.—Dallas 1980, writ ref'd n.r.e.), this court held that Rule 166–A(c) allows issues to be "expressly presented" by all summary judgment evidence presented to and considered by the court, even if the motion fails to specifically set forth the issue. In *Stark v. Morgan,* 602 S.W.2d 298 (Tex. Civ. App.—Dallas 1980, writ ref'd n.r.e.) this court held that summary judgment may be granted on *any* ground set forth in the motion. *See also Houchins v. Scheltz,* 590 S.W.2d 745, 750 (Tex. Civ. App.—Houston [14th Dist.] 1979, no writ). Therefore, if the *issue* is properly presented, the trial court is not bound by the label chosen by the College in describing that issue.

I would hold that the plain and intelligible language of the contract of employment does not provide for arbitration, but rather provides a system of administrative "due process" which is a prerequisite to termination. It is immaterial that the final decision was made by the College, if those were the terms upon which the parties agreed.

---

1. The summary judgment reads, in part, as follows:

"... [Appellant] could not seek relitigation of the issue of insubordination because [Appellant] had agreed *in his contract* that the decision of the Executive Committee of the Board of Trustees of Dallas Baptist College would be *final* and because [Appellant] submitted to a hearing before said Executive Committee of the Board of Trustees of Dallas Baptist College which had conducted a de

novo hearing pursuant to [Appellant's] employment contract and found that [Appellant] had in fact been insubordinate towards Dallas Baptist College.... [S]ince [Appellant] was claiming no fraud, misconduct or bad faith on the part of the Executive Committee of the Board of Trustees, there were no material facts in dispute in this case." (Emphasis supplied.)

s/ FRED HARLESS Sitting
for the Honorable Oswin Chrisman

In *Golden State Mutual Life Insurance Co. v. Kelley,* 380 S.W.2d 139, 140 (Tex. Civ. App.—Houston 1964, writ ref'd n.r.e.), an insurance agent was discharged pursuant to a contract of employment which provided for termination when *in the opinion of the company,* his production became "insufficient." The Court held that "the fact that a reasonable man considering the same facts might not have reached this conclusion becomes immaterial in light of the plain and clear provision of the contract." *See also Goodrum v. State,* 158 S.W.2d 81, 86 (Tex. Civ. App.—Galveston 1942, writ ref'd w.o.m.); *Martin Bros. v. State,* 146 S.W.2d 782, 785 (Tex. Civ. App.—Austin 1940), reversed on other grounds 160 S.W.2d 58 (Tex. 1942); *McKenzie Construction Co. v. Chanowsky,* 86 S.W.2d 480, 483 (Tex. Civ. App.—Ft. Worth 1935, writ ref'd); *Schoenfeld v. DePuy,* 58 S.W.2d 574, 575 (Tex. Civ. App.—San Antonio 1933, writ dism'd). Furthermore, I find no public policy offended by allowing the College to make a final judgment of the merits of the grievance, exclusive of the judicial system. In *Green v. Board of Regents of Texas Tech University,* 474 F.2d 594, 595 (5th Cir. 1973), the court held that, "the findings and decision of academic administrative bodies are to be upheld by the courts, when reached by correct procedures and substantial evidence." In *Viverette v. Lurleen B. Wallace State Junior College,* 587 F.2d 191 (5th Cir. 1979), the court limited its review to the issues of due process and substantial evidence; *See also Zimmerer v. Spencer,* 485 F.2d 176, 179 n.2 (5th Cir. 1973).

The courts justifiably review the decision of a party designated by contract to settle disputes if there was a denial of administrative due process, *see Viverette, supra;* or the decision was an act of partiality, fraud, or misconduct, *see Martin Bros., supra,* at 785; or the decision was made capriciously or fraudulently, *see McKenzie Construction Company, supra,* at 483; or in bad faith, *see Schoenfeld, supra* at 575; or was not made in good faith, untainted by fraud, *see Golden State Mutual Life Insurance Co., supra* at 14; or was made capriciously, arbitrarily or fraudulently, *see Goodrum, supra* at 86.

Here, there is an absence of summary judgment proof raising any fact issue of a denial of due process, or the presence of fraud or arbitrariness.

There is, however, an abundance of summary judgment proof indicating that the terms of the employment contract were met. The record indicates that the appellant was notified specifically of the charges against him, and was afforded, at appellant's request, a hearing before the Administrative Council of the College, and later the Executive Committee of the Board of Trustees. Appellant was represented by counsel at both hearings and was granted the opportunity to directly examine and cross-examine the witness. He was allowed to introduce exhibits and call witnesses. Full transcripts were made of both hearings, both of which were *de novo* in nature. There is no hint of impropriety in the termination procedure. Appellant is unhappy only with the results, and wants the trial court to determine the merits of the termination.

Appellant contended in his answer to the motion for summary judgment, that there are two contested issues of material fact: (1) the meaning of the sentence "the action of the Board of Trustees will be final"; and (2) whether appellant was "insubordinate." The first issue is determinative of whether the second was properly before the Court.

I agree with the majority that the meaning of the word "final" is a question of law. Appellant did not plead ambiguity, and both the majority and I hold that the words are reasonably susceptible to only one meaning, *See Universal C.I.T. Credit Corp. v. Daniel,* 150 Tex. 513, 243 S.W.2d 154 (1951). Ironically, we differ regarding what the "only one meaning" is. If the word "final," as a matter of law, only terminates administrative procedures, as is claimed by the majority, then this case is properly remanded for a full trial on the merits. If, however, the word "final" means concluded forever, which is my position, then the appellant would have no right to relitigate the facts of insubordination.

I cannot agree that the word "final," as used in the phrase, "the action taken by the Board of Trustees shall be final," should be held, as a matter of law, to apply only to administrative hearings. Yet, the majority holds that "this is the only reasonable reading to be given this language." I would hold that a more reasonable interpretation of the word "final"[2] means that the issue has come to a lasting conclusion. The word should not be interpreted by this court to mean a special, or qualified finality when the word "final" is stated in the contract unequivocally. A contractual provision which specifies a "final" decision, precluding a judicial review of the facts underlying the decision, is not without precedent. *See Goodrum, supra* at 84 (". . . and that his [the engineer's] decisions shall be final,"); *Martin Bros., supra* 785 (". . . and his decisions shall be *final* and binding"); and *Shoenfeld, supra* at 575 ("the decision . . . was to be *final.*") (Emphasis supplied).

Further, if the word "final" applies only to the administrative hearings, as majority holds, then there is no reason for the sentence to exist. After the Board of Trustee's decision, there was no higher body within the College to which an appeal could be taken, and the issue became final, administratively, for want of another forum. Thus, the word "final" must reasonably mean *any* further review, including judicial review.

Because appellant had contracted that the "action taken by the board shall be final," I conclude that he was properly denied a *de novo* review of the Board's finding of "insubordination," absent any averment of bad faith, arbitrariness, or lack of administrative due process. I would therefore affirm.

2. "final, adj. 1 a: not to be altered or undone: conclusive." Webster's New Collegiate Dictionary, 425 (1981).