**PORTER & CLEMENTS, L.L.P., John O'Neill, Evelyn V. Keyes, and J. Eugene Clements, Relators,**

v.

**The Honorable Kathleen S. STONE, Judge of the 55th District Court of Harris County, Texas, Respondent.**

**PORTER & CLEMENTS, L.L.P., John O'Neill, Evelyn V. Keyes, and Eugene Clements, Appellants,**

v.

**Scarlett RABALAIS, Alvin Rabalais, and Hot Diggity Dog, Inc., Appellees.**

Nos. 01–96–00872–CV, 01–96–00873–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Dec. 5, 1996.

Rehearing Overruled Feb. 24, 1997.

---

Sam Cruse, Jr., Stephen Bailey, Billy Shepherd, Houston, for Appellant.

Sean F. O'Neill, San Antonio, for Appellees.

Before MIRABAL, O'CONNOR and WILSON, JJ.

## OPINION

MIRABAL, Justice.

By way of an interlocutory appeal and a mandamus action, Porter & Clements, L.L.P., and several attorneys employed by the firm attack the trial court's denial of their motion to compel arbitration. We reverse and remand in the interlocutory appeal and overrule the motion for leave to file a petition for writ of mandamus as improvidently granted.

On May 9, 1991, Porter & Clements entered into a fee agreement with Alvin and Scarlett Rabalais, owners of a food services company known as Hot Diggity Dog (HDD). Porter & Clements is a law firm located in Houston, Texas. Scarlett Rabalais is a resident of Harris County, Texas. Alvin Rabalais is a resident of Dallas County, Texas.

HDD's principal place of business is Dallas, Texas.

The Rabalais hired Porter & Clements to represent them in a suit against Sam's Wholesale Clubs (Sam's). Sam's is a Delaware corporation with its headquarters in Arkansas. The lawsuit concerned HDD's rights to operate hot dog carts at Sam's locations throughout the country. The Rabalais' claims against Sam's included unfair competition, trademark infringement, breach of contract, breach of fiduciary duties, and other business-related torts. Ultimately, a take nothing judgment was entered against the Rabalais.

On August 31, 1995, the Rabalais sued their attorneys, Porter & Clements. The Rabalais claimed that Porter & Clements had misrepresented to them the potential for a recovery in the Sam's lawsuit, and that if they had known the weakness of their legal position they would not have pursued the lawsuit, but would have accepted a settlement offer made by Sam's.

On May 29, 1996, Porter & Clements filed a motion to compel arbitration and stay litigation based on an arbitration provision in the fee agreement with the Rabalais. Porter & Clements then filed a motion to clarify that it was requesting *binding* arbitration. The Rabalais filed a response in which they agreed to arbitration, but objected to *binding* arbitration. After considering the motion, the response, and the attached exhibits, the trial court denied Porter & Clements' motion to compel binding arbitration. No evidentiary hearing was held.

■ Porter & Clements filed a motion for leave to file a petition for writ of mandamus, contending that arbitration was required by the Federal Arbitration Act.[1] Porter & Clements contemporaneously filed an interlocutory appeal, contending that arbitration was required by the Texas Arbitration Act.[2] Parallel proceedings were required because an interlocutory appeal is only available to pursue a claim under the Texas Arbitration Act. TEX.CIV.PRAC. & REM.CODE ANN. § 171.017(a)(1) (Vernon Supp.1996). A writ of mandamus is required to allow a Texas court to review an order refusing to compel arbitration under the Federal Arbitration Act. *Jack B. Anglin v. Tipps,* 842 S.W.2d 266, 272 (Tex.1992); *Smith Barney Shearson, Inc. v. Finstad,* 888 S.W.2d 111, 113 (Tex.App.—Houston [1st Dist.] 1994, no writ).

The trial court did not specify whether state or federal arbitration laws applied to the contract in question. Porter & Clements argues that under either Act, arbitration is required.

■ The Federal Arbitration Act applies to "a contract evidencing a transaction involving commerce." 9 U.S.C § 2. In this case, the only possible connection to commerce is the fact that one of the parties to the underlying lawsuit, Sam's, is a foreign corporation doing business in several different states. However, all parties to the fee agreement at issue in this case are residents of Texas. The fee agreement involves the providing of legal services in Texas. The dispute giving rise to the claim for arbitration involves misrepresentations that were allegedly made to the Rabalais in Texas. The underlying lawsuit, the handling of which gives rise to the Rabalais' claim against Porter & Clements, was filed in federal court in Texas. The fee agreement does not fall within the terms of the Federal Arbitration Act. *See Withers–Busby Group v. Surety Industries,* 538 S.W.2d 198, 199 (Tex. Civ.App.—Dallas 1976, no writ).

Accordingly, our order granting Porter & Clements' motion for leave to file petition for writ of mandamus was improvidently granted. We withdraw our order and overrule the motion for leave to file. We will apply the Texas Arbitration Act[3] to this case.

---

1. 9 U.S.C. § 2.

2. TEX.CIV.PRAC. & REM.CODE ANN. § 171.001–171.023 (Vernon Supp.1996).

3. The Texas Arbitration Act reads, in relevant part:

§ 171.001. A written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable....

§ 171.002(a). On application of a party showing an agreement described in section 171.001,

The fee agreement between Porter & Clements and the Rabalais indicated that the law firm would represent the Rabalais in their suit against Sam's and the firm would be paid a contingency fee. The fee agreement also contained the following arbitration clause:

> Should any dispute arise regarding the terms or conditions of this contract or the fees, costs, or expenses payable thereunder, all parties hereby agree that the dispute shall be referred to arbitration by an arbitrator appointed by the senior United States District Judge for the Southern District of Texas. For example, if you receive intangible or illiquid assets such as contract or lease provisions by way of settlement, and if we are unable to agree on their fair value, an arbitrator will set fair value for division purposes.

Both Porter & Clements and the Rabalais agree that an arbitration agreement exists and that the agreement encompasses the claims asserted. The only issue is whether the arbitration is to be binding.

■ The Rabalais first argue that only nonbinding arbitration is required because section 154.027 of the Texas Alternative Dispute Resolution Act (ADR Act)[4] requires the parties to an arbitration to stipulate in advance if they intend for an arbitration award to be binding.

The Rabalais' reliance on section 154.027 of the ADR Act is misplaced because the ADR Act only deals with court-ordered referrals of pending litigation to alternative dispute resolution procedures. Tex.Civ.Prac. & Rem. Code Ann. § 154.021 (Vernon Supp.1996). The ADR Act does not deal with private,

contractually agreed-upon provisions for arbitration.

The present case does not involve court-ordered referral of pending litigation to an ADR procedure. Rather, the parties contractually agreed to arbitration before the current dispute ever arose. As such, the current dispute is governed by the Texas Arbitration Act, not the ADR Act.

■ The Rabalais also argue that the plain language of the arbitration agreement requires nonbinding arbitration. We note that neither party contends the agreement is ambiguous; therefore, we will construe its meaning as a matter of law. *Manes v. Dallas Baptist College,* 638 S.W.2d 143, 145 (Tex. App.—Dallas 1982, writ ref'd n.r.e.).

■ An arbitration agreement need not be in any particular form, but no party is under a duty to arbitrate unless by clear language he has so agreed, and it must clearly appear that the intention of the parties was to submit their dispute to the arbitrators and to be bound by that decision. *Wetzel v. Sullivan, King & Sabom, P.C.,* 745 S.W.2d 78, 81 (Tex.App.—Houston [1st Dist.] 1988, no writ); *Manes,* 638 S.W.2d at 145. A clause requiring arbitration is interpreted under contract principles, and the language contained within will be enforced according to its plain meaning unless this would defeat the intention of the parties. *Pepe Int'l Dev. Co. v. Pub Brewing Co.,* 915 S.W.2d 925, 930 (Tex.App.—Houston [1st Dist.] 1996, no writ). Historically, the settlement of disputes by arbitration has been favored in Texas law. *L.H. Lacy Co. v. City of Lubbock,* 559 S.W.2d 348, 351 (Tex.1977); *Massey v.*

---

and the opposing party's refusal to arbitrate, the Court shall order the parties to proceed with arbitration. . . .

§ 171.003. If the arbitration agreement provides a method of appointment of arbitrators, this method shall be followed. . . .

§ 171.011 (b). The making of an agreement described in section 171.001 and to which that section is applicable . . . which provides for or authorizes an arbitration in this state, confers jurisdiction on the Court to enforce the agreement under this chapter and to enter judgment on an award thereunder.

§ 171.013. Upon application of a party, the Court shall confirm an award. . . .

**4.** The ADR Act provides:

(a) Nonbinding arbitration is a forum in which each party and counsel for the party present the position of the party before an impartial third party, who renders a specific award.

(b) If the parties stipulate in advance, the award is binding and is enforceable in the same manner as any contract obligation. If the parties do not stipulate in advance that the award is binding, the award is not binding and serves only as a basis for the parties' further settlement negotiations.

Tex.Civ.Prac.& Rem.Code Ann. § 154.027 (Vernon Supp.1996).

*Galvan,* 822 S.W.2d 309, 316 (Tex.App.—Houston [14th Dist.] 1992, writ denied).

In *McKee v. Home Buyers Warranty Corp. II,* 45 F.3d 981, 983–85 (5th Cir.1995), the court construed the Louisiana arbitration statute, which is similar to the Texas statute. There the court considered whether the parties to a contract had agreed to *binding* arbitration. The clause at issue provided that the parties would submit any dispute to "an arbitration to be conducted by the American Arbitration Association (A.A.A.)."[5] The plaintiffs argued that the agreement did not contemplate "binding" arbitration. *Id.* at 983. The court held that under Louisiana law, binding arbitration was required because arbitration, by definition, was a binding procedure. *Id.* at 985.

> Arbitration is binding only if a court may enter judgment on the award made pursuant to the arbitration. While the Louisiana Arbitration Law generally parallels the Federal Arbitration Act, there is a significant difference between the sections dealing with entry of judgment. Disputes about whether arbitration is binding can arise under the Federal Arbitration Act because the Federal Arbitration Act provides that a court may enter judgment on the arbitration only if the parties agreed that a court may enter judgment. *See* 9 U.S.C. § 9. Such disputes do not arise under the Louisiana Arbitration Law because the Louisiana law provides that a court may enter judgment if the parties agreed to arbitration; the Louisiana law simply makes no provision for non-binding arbitration. *See* LSA-R.S. 9:4209. Thus under the Louisiana Arbitration Law, if the parties agreed to a non-binding procedure, they did not agree to arbitration.

*McKee,* 45 F.3d at 985.0011

The Texas Arbitration Act is similar to the Louisiana arbitration statute in that it also authorizes the trial court to enter a final judgment based upon the arbitrator's award. TEX.CIV.PRAC. & REM.CODE ANN. §§ 171.011(b), 171.013 (Vernon Supp.1996). We agree with the Fifth Circuit's interpretation of the similar statute in *McKee.* By providing that a trial court "shall confirm an award," the Texas Arbitration Act necessarily contemplates that the arbitration award will be binding. The Texas Arbitration Act makes no provision for a non-binding arbitration procedure.

This interpretation of the Texas Arbitration Act is consistent with the historical nature of arbitration in Texas law. In Texas, "arbitration" is generally a contractual proceeding by which the parties to a controversy, in order to obtain a speedy and inexpensive *final disposition* of the disputed matter, select arbitrators or judges of their own choice, and by consent, submit the controversy to these arbitrators *for determination. Manes,* 638 S.W.2d at 145; *Alderman v. Alderman,* 296 S.W.2d 312, 315 (Tex.Civ. App.—San Antonio 1956, writ ref'd). An arbitrator's award has the same effect as a judgment of a court of last resort, and the trial court may not substitute its judgment for the arbitrator's merely because it would have reached a different conclusion. *City of Baytown v. C.L.Winter, Inc.,* 886 S.W.2d 515, 518 (Tex.App.—Houston [1st Dist.] 1994, writ denied). An arbitrator's award can only be set aside by the courts under limited circumstances. *See* TEX.CIV.PRAC. & REM.CODE ANN. § 171.014 (Vernon Supp.1996).

These authorities, as well as the reasoning of *McKee,* lead us to conclude that, by its very nature, arbitration under the Texas Arbitration Act is a mechanism by which the

---

**5.** The complete text of the arbitration agreement in *McKee* provided:

> Should the Builder of Homebuyer(s) disagree with the Insurer's decision to deny the claim as recommended by the Service, the contesting party shall call for conciliation with the Service or an arbitration to be conducted by the American Arbitration Association (A.A.A.), or other mutually agreeable arbitration service at the Service's expense.... The conciliation and/or arbitration process will be conducted in accordance with the warranty conditions described herein and the rules and regulations of the A.A.A. or other mutually agreeable arbitration service. The dispute settlement process shall precede any litigation attempted by either party on items that are specifically included in this warranty.... The dispute will be resolved or an award rendered by the arbitrator within 40 days from the time the form is received by the arbitration service.

parties to a contract reach a *binding resolution* to their differences.

In *McDonnell Douglas Finance Corp. v. Pennsylvania Power & Light Co.*, 858 F.2d 825, 830–31 (2nd Cir.1988), the court considered whether the parties had entered a binding arbitration agreement. The clause at issue provided:

> If the Company should disagree with any Owner's computation of the amount of the required indemnity payment or refund thereof as provided below or if any Owner should disagree with such good faith determination of the Company that there is substantial risk, *the Company and the Owner shall appoint an independent tax counsel to resolve the dispute*, and if the parties cannot agree to the appointment of such counsel, said independent tax counsel shall be appointed by the American Arbitration Association and the Company shall not be obligated to pay, and such Owner shall not be obligated to refund, the disputed portion of such amount until and only to the extent that such dispute is resolved adversely to the party required to make payment.

*Id.* at 827 (emphasis added). The Second Circuit stated that it was irrelevant that the clause did not use the word "arbitration;" what was important was that the parties agreed to submit their dispute for binding resolution by a third party. *Id.* at 830–31. Similarly, the absence of the words "final" or "binding" was considered insignificant. *Id.* at 830.

The agreement in this case designates a mechanism for choosing an arbitrator. The agreement also gives an example of the type of claim that will be referred to arbitration. In the example, the agreement states that the arbitrator "will set fair value" of intangible assets received in any settlement. The use of the term "will set," like the use of the term "resolve" in *McDonnell Douglas*, indicates that the arbitrator's decision will be final. The arbitration clause does not provide for any appeal mechanism.

We hold that the mere omission of the term "binding" from an arbitration agreement does not automatically transform it into a nonbinding arbitration agreement. The arbitration agreement in the present case provides for binding arbitration. Therefore, the trial court erred by denying Porter & Clements' motion to compel binding arbitration.

We sustain Porter & Clements' sole point of error.

We reverse the judgment of the trial court and remand for further proceedings consistent with this opinion.