TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-06-00692-CV






Provision Interactive Technologies, Inc., a California Corporation, Appellant


v.


BetaCorp Management, Inc., a Nevada Corporation ndba 

Dimensions Network, Inc., Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT

NO. D-1-GN-04-003092, HONORABLE MARGARET A. COOPER, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N



 Appellant Provision Interactive Technologies, Inc. ("Provision") appeals from a final
judgment entered on an arbitration award pursuant to the Texas General Arbitration Act
(the "TAA"). See Tex. Civ. Prac. & Rem. Code Ann. §§ 171.001-.098 (West 2005). Provision filed
an application to vacate the award on the ground that the parties had no agreement to arbitrate under
the TAA. The trial court denied Provision's application and entered judgment on the award against
Provision in favor of BetaCorp Management, Inc. ("BetaCorp"). Provision appeals, arguing that the
parties did not agree to binding arbitration and that the arbitration agreement is fatally ambiguous. 
Because we hold that the arbitration clause in the contract between Provision and BetaCorp
constitutes an unambiguous agreement to arbitrate under the TAA, we affirm the trial
court's judgment. 



BACKGROUND

 The subject of the arbitration leading to this appeal is a dispute between Provision
and BetaCorp regarding an original equipment manufacturer agreement (the "OEM agreement") for
the purchase of 3D aerial-imaging kiosk platforms and other services related to the equipment.

 Section 27 of the OEM agreement states:



§ 27 Arbitration


The contracting Parties shall attempt to settle the questions at dispute, if any, through
direct negotiations. If the direct negotiations remain unsuccessful, prior to the
commencement of filing any legal actions against the other, the Parties stipulate to
employ Arbitration organized under the statutes or the Courts of the States in which
the complaining party is domiciled, California for PITI and Texas for BMI. Venue
shall be in the county where the complaining party is domiciled.



 At some point after the OEM agreement was signed, BetaCorp sent Provision a notice
of material breach, alleging that Provision had revealed proprietary information. BetaCorp and
Provision subsequently attempted to settle the dispute through direct negotiations in Texas. When
these negotiations proved unsuccessful, Provision requested arbitration in California. BetaCorp did
not respond to Provision's request for arbitration, but instead filed an application for arbitration in
Travis County, Texas under the TAA. Over Provision's objection, the Travis County trial court
entered an order appointing an arbitrator over the dispute.

 The parties proceeded to arbitration in Texas under the TAA. On February 15, 2006,
the arbitrator signed an arbitration award that awarded BetaCorp $472,500 against Provision, plus
attorneys' fees. The arbitration award expressly acknowledged Provision's objections
to the arbitration.

 Provision filed an application in the trial court to vacate the award on the ground that
there was no agreement to arbitrate under the TAA. See id. § 171.088(a)(4). The trial court denied
Provision's application, confirmed the award, and entered judgment on the award in the amount of
$592,312.19 against Provision. See id. §§ 171.088(c), .092. Provision subsequently filed a motion
for new trial, which was denied by the trial court, and this appeal followed.

 Provision argues on appeal that the trial court erred in entering judgment on the
arbitration award under the TAA because (1) federal law, rather than the TAA, should have been
applied in enforcing the arbitration provision, (2) the arbitration provision is fatally ambiguous, and
(3) even if state law does apply, the parties did not enter into a valid "agreement to arbitrate" under
the TAA that shows the parties intended to be bound by arbitration.

STANDARD OF REVIEW

 A trial court's determination of the validity of an arbitration agreement is a legal
question subject to de novo review. J.M. Davidson, Inc. v. Webster, 128 S.W.3d 223, 227
(Tex. 2003). While Texas courts recognize a strong presumption favoring arbitration, that
presumption does not apply to the initial determination of whether a valid arbitration agreement
exists. Id. Arbitration agreements are interpreted under traditional contract principles. Id. 

 The issue of whether contractual ambiguity exists is a question of law that we review
de novo. In re D. Wilson Constr. Co., 196 S.W.3d 774, 781 (Tex. 2006). A contract is not
ambiguous "merely because the parties assert forceful and diametrically opposed interpretations,"
but only if it is subject to two or more reasonable interpretations. Id. 


DISCUSSION

Governing Statute

 As a threshold matter, Provision argues that this dispute should be governed by the
Federal Arbitration Act (the "FAA"), 9 U.S.C.A. §§ 1-16 (West 1999 & Supp. 2006), rather than the
TAA. The FAA applies to arbitration provisions in "any contract affecting commerce, as far as the
Commerce Clause of the United States Constitution will reach." In re L&L Kempwood Assocs.,
L.P., 9 S.W.3d 125, 127 (Tex. 1999).

 The present case involves a contract between BetaCorp, a Nevada corporation with
its principal place of business in Texas, and Provision, a California corporation with its principal
place of business in California, for the purchase of 3D aerial-imaging kiosk platforms to be used in
Texas and Oklahoma. The FAA has been applied to contracts containing far fewer connections to
interstate commerce. See, e.g., In re Nexion Health at Humble, Inc., 173 S.W.3d 67, 69 (Tex. 2005)
(holding FAA applied to Texas medical malpractice case brought by Texans against Texans in Texas
state court for torts committed in Texas because Medicare had paid for some of plaintiff's medical
expenses); Kempwood, 9 S.W.3d at 127 (holding FAA applied to contract for work to be done on
apartments located in Texas by Texas business for Georgia owners); Jack B. Anglin Co.,
Inc. v. Tipps, 842 S.W.2d 266, 270 n.6 (Tex. 1992) (holding that where Michigan corporation
contracted to build dam for a Texas city, the contract "clearly establishes interstate activity"). The
contract between Provision and BetaCorp clearly falls within the meaning of interstate commerce
and the FAA is applicable to the arbitration provision. 

 In drafting an arbitration provision, parties are free to specify which statute shall apply
to arbitration proceedings. Volt Info. Sci., Inc. v. Board of Tr. of Leland Stanford Jr. Univ.,
489 U.S. 468, 472 (1989). However, if the parties do not explicitly state which statute applies, the
courts must look to the contract between the parties, applying the FAA if the contract involves
interstate commerce. See Kempwood, 9 S.W.3d at 127-28. In the present case, the OEM agreement
states that the parties "stipulate to employ Arbitration organized under the statutes or the Courts of
the States in which the complaining party is domiciled." The Texas Supreme Court has held that
where a contract does not specifically reference the FAA or the TAA, language generically referring
to the law of a particular place invokes both federal and state law. See Wilson, 196 S.W.3d at 778-79
(holding that where contract stated that it shall be "governed by the law of the place where the
Project is located," both TAA and FAA applied); Kempwood, 9 S.W.3d at 127-28 (interpreting "the
law of the place where the Project is located" to include both TAA and FAA, stating that Houston,
where project was located, "is subject to federal law as well as Texas law. The choice-of-law
provision did not specifically exclude the application of federal law, and absent such an exclusion
we decline to read the choice-of-law clause as having such an effect."). Furthermore, the FAA is
considered "part of the substantive law of Texas." Capital Income Properties-LXXX v. Blackmon,
843 S.W.2d 22, 23 (Tex. 1992). As a result, we hold that the parties' arbitration provision invoking
"the statutes or the Court of the State[]" of Texas necessarily includes both the FAA and the TAA.

 The FAA and the TAA, however, are not mutually exclusive. See Wilson,
196 S.W.3d at 780 ("The mere fact that a contract affects interstate commerce, thus triggering the
FAA, does not preclude enforcement under the TAA as well."); W. Dow
Hamm III Corp. v. Millennium Income Fund, L.L.C., 237 S.W.3d 745, 751 (Tex. App.--Houston
2007, orig. proceeding) ("Even when the FAA applies to an arbitration agreement, however, the
parties may invoke the TAA to enforce the agreement, as long as nothing in the TAA would thwart
the FAA's policies or goals in the particular context."). 

 The FAA preempts the TAA only if the following four factors are present: (1) the
agreement is in writing, (2) it involves interstate commerce, (3) it can withstand scrutiny under
traditional contract defenses, and (4) state law affects the enforceability of the agreement. Nexion,
173 S.W.3d at 69. It is undisputed that the OEM agreement is in writing, and as discussed above,
it clearly involves interstate commerce. Furthermore, neither party has asserted any traditional
contract defense against enforcement of the arbitration agreement. Therefore, the only factor at issue
in our determination of whether the FAA preempts the TAA in this case is whether Texas law affects
the enforceability of the arbitration agreement.

 In order to satisfy the fourth factor necessary for preemption, Texas law must refuse
to enforce an arbitration agreement that the FAA would enforce, either because (1) the TAA has
expressly exempted the agreement from coverage or (2) the TAA has imposed an enforceability
requirement not found in the FAA. Wilson, 196 S.W.3d at 780. Where parties have asserted nothing
in the TAA that would subvert enforcement of the agreement at issue, the FAA does not preempt the
TAA. Id. In the present case, the parties do not argue that the TAA expressly exempts the
agreement at issue from coverage, nor do they argue that the TAA imposes an enforceability
requirement not found in the FAA. (1) In fact, the converse is true, as Provision argues that section
9 of the FAA requires the parties to expressly agree that judgment shall be entered on an award
before such judgment may be entered, while the TAA does not impose such a requirement. (2)

 The FAA preempts only those state laws that undermine the goals and policies of the
FAA. Volt, 489 U.S. at 477-78. The FAA was initially designed "to overrule the judiciary's
longstanding refusal to enforce agreements to arbitrate." Dean Witter Reynolds, Inc. v. Byrd,
470 U.S. 213, 219-220 (1985). "The primary purpose of the Federal Act is to require the courts to
compel arbitration when the parties have so provided in their contract, despite any state legislative
attempts to limit the enforceability of arbitration agreements." Anglin, 842 S.W.2d at 271. In light
of this purpose, the FAA preempts only those state laws that prevent the enforcement of arbitration
agreements, without affecting state laws that foster the federal policy favoring arbitration. 
Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 57-58 (1995); see also Wachovia Sec.,
LLC v. Emery, 186 S.W.3d 107, 111 (Tex. App.--Houston [1st Dist.] 2005, orig. proceeding)
("The FAA displaces state law only to the extent the state law conflicts with the FAA's purpose of
enforcing the parties' contractual obligation to arbitrate."). 

 Because the TAA does not prohibit the enforceability of the arbitration agreement
between Provision and BetaCorp, and because it promotes, rather than undermines, the goals and
policies of the FAA, the FAA does not preempt the TAA in this case. (3) As a result, it was not
improper for BetaCorp to file its application for arbitration under the TAA or for arbitration
proceedings to be conducted under the TAA, and we will apply the TAA in addressing Provision's
remaining arguments on appeal.


Ambiguity

 Provision argues that the arbitration provision is ambiguous because it does not
specify a governing statute, meaning arbitration could conceivably be conducted under the TAA, the
FAA, or the Texas Alternative Dispute Resolution Act (the "Texas ADR Act"), Tex. Civ. Prac.
& Rem. Code Ann. §§ 154.001-.073 (West 2005). 

 Arbitration provisions that fail to specify a particular statute to govern arbitration are
not considered fatally ambiguous by Texas courts. See Wilson, 196 S.W.3d at 778-79 (interpreting
arbitration agreement to invoke both federal and state law when "contracts in question reference
neither the FAA nor TAA," but merely invoke law of place where project is located);
Henry v. Gonzalez, 18 S.W.3d 684, 688 (Tex. App.--San Antonio 2000, pet. dism'd by agr.)
(applying interstate-commerce analysis to determine that TAA applies to arbitration provision,
despite fact that contract was internally inconsistent in naming both TAA and FAA as governing
statute); In re Education Mgmt. Corp., Inc., 14 S.W.3d 418, 422 (Tex. App.--Houston [14th Dist.]
2000, orig. proceeding) (holding that where agreement is silent as to application of FAA or TAA,
question of whether transaction involves interstate commerce is issue of fact). We have already
resolved the interaction between the TAA and the FAA in relation to the OEM agreement. 
Furthermore, the Texas ADR Act is clearly inapplicable, as it applies solely to cases in which a court
has referred a pending dispute to alternative dispute resolution, which is not the case here. See
Tex. Civ. Prac. & Rem. Code Ann. § 154.021; Porter & Clements, L.L.P. v. Stone, 935 S.W.2d 217,
220 (Tex. App.--Houston [1st Dist.] 1996, orig. proceeding). As a result, we hold that the
arbitration agreement's failure to specify a governing statute does not render the
agreement ambiguous.

 Provision also argues that the arbitration agreement is ambiguous because it requires
that arbitration take place under the law of the state in which "the complaining party is domiciled,"
and does not provide which law will apply in the event that there is more than one complaining party. 
Provision asserts that both Provision and BetaCorp are complaining parties, emphasizing the fact that
Provision requested arbitration in California prior to BetaCorp filing an arbitration application in
Texas. However, the record reflects that Provision requested California arbitration only in response
to the letter from BetaCorp dated July 29, 2004, which served as a notice of material breach of the
contract. In light of the circumstances, it would appear from the notice of material breach that
BetaCorp was in fact the "complaining party," as contemplated by the arbitration agreement. While
Provision asserts that there are now two complaining parties, a more accurate representation of the
facts is that BetaCorp is the complaining party, while Provision merely sought arbitration in
California in order to resolve BetaCorp's complaints. This view of the contract is consistent with
the trial court's order on BetaCorp's application, which states that BetaCorp "is a 'complaining
party' for purposes of the arbitration clause in the OEM agreement . . . by virtue of the letter dated
July 29, 2004 from James D. Jameson, for [BetaCorp], to Samuel J. Tata, for [Provision]." 

 Furthermore, we must give effect to the objective intention of the parties as expressed
or as is apparent in the writing, recognizing that a reasonable interpretation of an agreement is
preferred to one that is unreasonable. Westwind Exploration, Inc. v. Homestate Sav. Ass'n,
696 S.W.2d 378, 382 (Tex. 1985). The arbitration provision can reasonably be interpreted to mean
that in a dispute regarding the OEM agreement, arbitration is governed by the law of the state where
the initial complaining party is domiciled. To hold otherwise would lead to the unreasonable result
that the parties agreed to an arbitration provision in which a non-complaining party could assert a
counter-complaint and file for arbitration in the state of its domicile, causing competing applications
to be filed in two different states. A contract is ambiguous only if it is subject to two or more
reasonable interpretations after applying the pertinent rules of construction. Wilson, 196 S.W.3d at
781. Because there is only one reasonable interpretation of the arbitration provision's "complaining
party" language, we hold that the provision is unambiguous.


Agreement to Arbitrate

 Provision argues that the arbitration provision does not constitute an "agreement to
arbitrate" under the TAA because it does not expressly state that arbitration will be binding, and it
dictates that arbitration will take place "prior to the commencement of filing any legal actions,"
which, Provision argues, necessarily contemplates non-binding arbitration.

 The TAA allows a court to vacate an arbitration award if (1) there was no "agreement
to arbitrate," (2) the issue was not adversely determined in a proceeding to compel arbitration under
subchapter B of the TAA, and (3) the party asking the court to vacate the award did not participate
in arbitration without objection. Tex. Civ. Prac. & Rem. Code Ann. § 171.088(a)(4).

 BetaCorp, in its application for arbitration, expressly disclaimed any request for relief
under subchapter B of the TAA, instead seeking orders from the court under subchapters C and D. 
Furthermore, Provision consistently objected to arbitration proceedings, expressly reserving all rights
to contest any binding arbitration award entered in Texas in its filings in the arbitration. As a result,
our determination of whether the arbitration award should be vacated turns solely on whether there
was an "agreement to arbitrate."

 Provision argues that the parties did not agree to binding arbitration so, as a result, 
there was no valid agreement to arbitrate under the TAA because the TAA contemplates only
binding arbitration.

 We agree with Provision's view that the TAA contemplates only binding arbitration,
as the TAA makes no provision for nonbinding arbitration. See In re Daniel S. Cartwright,
104 S.W.3d 706, 711 (Tex. App.--Houston [1st Dist.] 2003, orig. proceeding) ("The TAA
necessarily contemplates that the arbitration award be binding, and it makes no provision for a
nonbinding arbitration procedure."); Porter, 935 S.W.2d at 221-22 ("[B]y its very nature, arbitration
under the Texas Arbitration Act is a mechanism by which the parties to a contract reach a binding
resolution to their differences."). 

 However, we disagree with Provision's contention that the parties did not agree to
binding arbitration. The mere omission of the term "binding" from an arbitration agreement does
not automatically transform it into a nonbinding arbitration agreement. Porter, 935 S.W.2d at 222. 
In Porter, the court held that arbitration under the TAA is necessarily binding, even where there is
no express agreement that arbitration will be binding. Id. In reaching its conclusion, the court in
Porter relied on McKee v. Home Buyers Warranty Corp. II, 45 F.3d 981 (5th Cir. 1995), a Fifth
Circuit case applying Louisiana arbitration law. See Porter, 935 S.W.2d at 221.

 The facts of McKee are similar to the facts of the present case. The contract at issue
in McKee stated that arbitration "shall precede any litigation attempted by either party." 45 F.3d at
983. This language is similar to the OEM agreement, which required arbitration "prior to the
commencement of filing any legal actions." Based on this language, one of the parties argued that
arbitration was merely a condition precedent to litigation, and therefore that the contract called for
nonbinding arbitration. Id. The court rejected this view, concluding that under Louisiana law,
arbitration is by definition a binding procedure because, like the TAA, "the Louisiana law simply
makes no provision for non-binding arbitration." Id. Therefore, if the parties agreed to a nonbinding
procedure, they did not agree to arbitration. Id. The court stated that in order to find the condition-precedent language to be ambiguous, it would have to determine that the parties did not really agree
to arbitrate, even though the contract explicitly calls for arbitration. Id. "Such a stretch is plainly
contrary to the federal and state policies favoring arbitrability." Id.

 Arbitration under the TAA is by definition a binding procedure. Porter, 935 S.W.2d
at 221-22. Like the court in McKee, we are reluctant to hold that BetaCorp and Provision agreed to
a nonbinding procedure, because to do so would lead us to the conclusion that the parties did not
agree to arbitrate, despite the fact that the contract explicitly calls for arbitration. (4) As a result, we
hold that the parties agreed to binding arbitration. 


CONCLUSION

 While the FAA is applicable to the parties' arbitration agreement, it does not preempt
the TAA in this case. We hold that the arbitration agreement constitutes an unambiguous agreement
to arbitrate, and provides for binding arbitration under the TAA. As a result, we affirm the trial
court's judgment.


 __________________________________________

 Diane Henson, Justice 

Before Justices Patterson, Puryear and Henson

Affirmed

Filed: February 28, 2008
1. An example of an enforceability requirement imposed by state law that is not found in the
FAA is the TAA's requirement that arbitration agreements in personal injury cases must include the
signature of each party's counsel. See Tex. Civ. Prac. & Rem. Code Ann. § 171.002(c)(2)
(West 2005). This requirement has led to federal preemption of the TAA when it interferes with
enforceability of an arbitration agreement. See In re Nexion Health at Humble, Inc., 173 S.W.3d 67,
69 (Tex. 2005). 
2. Section 9 of the FAA reads, in relevant part: 


If the parties in their agreement have agreed that a judgment of the court shall be
entered upon the award made pursuant to arbitration, and shall specify the court, then
at any time within one year after the award is made any party to the arbitration may
apply to the court so specified for an order confirming the award, and thereupon the
court must grant such an order unless the award is vacated, modified, or corrected as
prescribed in sections 10 and 11 of this title.


9 U.S.C.A. § 9 (West 1999).
3. Due to our holding, it is not necessary for us to determine whether the trial court could have
entered judgment on the arbitration award if the FAA had preempted the TAA. Similarly, we
express no opinion regarding whether the FAA is applicable to non-binding arbitration agreements. 
4. The fact that the arbitration provision states that arbitration must occur "prior to the
commencement of filing any legal actions" is not inconsistent with a mutual agreement to binding
arbitration because subsequent legal action is required in order to enforce arbitration awards under
the TAA; such awards are not self-executing. In order to enforce an arbitration award, the party
seeking enforcement must apply to the trial court for confirmation of the award. See Tex. Civ.
Prac. & Rem. Code Ann. § 171.087 (West 2005). Upon confirmation, the trial court shall enter an
enforceable judgment or decree on the award. Id. § 171.092.