# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-06-00692-CV

**Provision Interactive Technologies, Inc., a California Corporation, Appellant**

**v.**

**BetaCorp Management, Inc., a Nevada Corporation  ndba**
**Dimensions Network, Inc., Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT
## NO. D-1-GN-04-003092, HONORABLE MARGARET A. COOPER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Provision Interactive Technologies, Inc. ("Provision") appeals from a final judgment entered on an arbitration award pursuant to the Texas General Arbitration Act (the "TAA"). *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 171.001-.098 (West 2005). Provision filed an application to vacate the award on the ground that the parties had no agreement to arbitrate under the TAA. The trial court denied Provision's application and entered judgment on the award against Provision in favor of BetaCorp Management, Inc. ("BetaCorp"). Provision appeals, arguing that the parties did not agree to binding arbitration and that the arbitration agreement is fatally ambiguous. Because we hold that the arbitration clause in the contract between Provision and BetaCorp constitutes an unambiguous agreement to arbitrate under the TAA, we affirm the trial court's judgment.

**BACKGROUND**

The subject of the arbitration leading to this appeal is a dispute between Provision and BetaCorp regarding an original equipment manufacturer agreement (the "OEM agreement") for the purchase of 3D aerial-imaging kiosk platforms and other services related to the equipment.

Section 27 of the OEM agreement states:

§ 27 <u>Arbitration</u>

The contracting Parties shall attempt to settle the questions at dispute, if any, through direct negotiations. If the direct negotiations remain unsuccessful, prior to the commencement of filing any legal actions against the other, the Parties stipulate to employ Arbitration organized under the statutes or the Courts of the States in which the complaining party is domiciled, California for PITI and Texas for BMI. Venue shall be in the county where the complaining party is domiciled.

At some point after the OEM agreement was signed, BetaCorp sent Provision a notice of material breach, alleging that Provision had revealed proprietary information. BetaCorp and Provision subsequently attempted to settle the dispute through direct negotiations in Texas. When these negotiations proved unsuccessful, Provision requested arbitration in California. BetaCorp did not respond to Provision's request for arbitration, but instead filed an application for arbitration in Travis County, Texas under the TAA. Over Provision's objection, the Travis County trial court entered an order appointing an arbitrator over the dispute.

The parties proceeded to arbitration in Texas under the TAA. On February 15, 2006, the arbitrator signed an arbitration award that awarded BetaCorp $472,500 against Provision, plus attorneys' fees. The arbitration award expressly acknowledged Provision's objections to the arbitration.

2

Provision filed an application in the trial court to vacate the award on the ground that there was no agreement to arbitrate under the TAA. *See id.* § 171.088(a)(4). The trial court denied Provision's application, confirmed the award, and entered judgment on the award in the amount of $592,312.19 against Provision. *See id*. §§ 171.088(c), .092. Provision subsequently filed a motion for new trial, which was denied by the trial court, and this appeal followed.

Provision argues on appeal that the trial court erred in entering judgment on the arbitration award under the TAA because (1) federal law, rather than the TAA, should have been applied in enforcing the arbitration provision, (2) the arbitration provision is fatally ambiguous, and (3) even if state law does apply, the parties did not enter into a valid "agreement to arbitrate" under the TAA that shows the parties intended to be bound by arbitration.

## STANDARD OF REVIEW

A trial court's determination of the validity of an arbitration agreement is a legal question subject to de novo review. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003). While Texas courts recognize a strong presumption favoring arbitration, that presumption does not apply to the initial determination of whether a valid arbitration agreement exists. *Id.* Arbitration agreements are interpreted under traditional contract principles. *Id.*

The issue of whether contractual ambiguity exists is a question of law that we review de novo. *In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 781 (Tex. 2006). A contract is not ambiguous "merely because the parties assert forceful and diametrically opposed interpretations," but only if it is subject to two or more reasonable interpretations. *Id.*

3

## DISCUSSION

**Governing Statute**

As a threshold matter, Provision argues that this dispute should be governed by the Federal Arbitration Act (the "FAA"), 9 U.S.C.A. §§ 1-16 (West 1999 & Supp. 2006), rather than the TAA. The FAA applies to arbitration provisions in "any contract affecting commerce, as far as the Commerce Clause of the United States Constitution will reach." *In re L&L Kempwood Assocs., L.P.*, 9 S.W.3d 125, 127 (Tex. 1999).

The present case involves a contract between BetaCorp, a Nevada corporation with its principal place of business in Texas, and Provision, a California corporation with its principal place of business in California, for the purchase of 3D aerial-imaging kiosk platforms to be used in Texas and Oklahoma. The FAA has been applied to contracts containing far fewer connections to interstate commerce. *See, e.g.*, *In re Nexion Health at Humble, Inc.*, 173 S.W.3d 67, 69 (Tex. 2005) (holding FAA applied to Texas medical malpractice case brought by Texans against Texans in Texas state court for torts committed in Texas because Medicare had paid for some of plaintiff's medical expenses); *Kempwood*, 9 S.W.3d at 127 (holding FAA applied to contract for work to be done on apartments located in Texas by Texas business for Georgia owners); *Jack B. Anglin Co., Inc. v. Tipps*, 842 S.W.2d 266, 270 n.6 (Tex. 1992) (holding that where Michigan corporation contracted to build dam for a Texas city, the contract "clearly establishes interstate activity"). The contract between Provision and BetaCorp clearly falls within the meaning of interstate commerce and the FAA is applicable to the arbitration provision.

In drafting an arbitration provision, parties are free to specify which statute shall apply to arbitration proceedings. *Volt Info. Sci., Inc. v. Board of Tr. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 472 (1989). However, if the parties do not explicitly state which statute applies, the courts must look to the contract between the parties, applying the FAA if the contract involves interstate commerce. *See Kempwood*, 9 S.W.3d at 127-28. In the present case, the OEM agreement states that the parties "stipulate to employ Arbitration organized under the statutes or the Courts of the States in which the complaining party is domiciled." The Texas Supreme Court has held that where a contract does not specifically reference the FAA or the TAA, language generically referring to the law of a particular place invokes both federal and state law. *See Wilson*, 196 S.W.3d at 778-79 (holding that where contract stated that it shall be "governed by the law of the place where the Project is located," both TAA and FAA applied); *Kempwood*, 9 S.W.3d at 127-28 (interpreting "the law of the place where the Project is located" to include both TAA and FAA, stating that Houston, where project was located, "is subject to federal law as well as Texas law. The choice-of-law provision did not specifically exclude the application of federal law, and absent such an exclusion we decline to read the choice-of-law clause as having such an effect."). Furthermore, the FAA is considered "part of the substantive law of Texas." *Capital Income Properties-LXXX v. Blackmon*, 843 S.W.2d 22, 23 (Tex. 1992). As a result, we hold that the parties' arbitration provision invoking "the statutes or the Court of the State[]" of Texas necessarily includes both the FAA and the TAA.

The FAA and the TAA, however, are not mutually exclusive. *See Wilson*, 196 S.W.3d at 780 ("The mere fact that a contract affects interstate commerce, thus triggering the FAA, does not preclude enforcement under the TAA as well."); *W. Dow Hamm III Corp. v. Millennium Income Fund, L.L.C.*, 237 S.W.3d 745, 751 (Tex. App.—Houston

5

2007, orig. proceeding) ("Even when the FAA applies to an arbitration agreement, however, the parties may invoke the TAA to enforce the agreement, as long as nothing in the TAA would thwart the FAA's policies or goals in the particular context.").

The FAA preempts the TAA only if the following four factors are present: (1) the agreement is in writing, (2) it involves interstate commerce, (3) it can withstand scrutiny under traditional contract defenses, and (4) state law affects the enforceability of the agreement. *Nexion*, 173 S.W.3d at 69. It is undisputed that the OEM agreement is in writing, and as discussed above, it clearly involves interstate commerce. Furthermore, neither party has asserted any traditional contract defense against enforcement of the arbitration agreement. Therefore, the only factor at issue in our determination of whether the FAA preempts the TAA in this case is whether Texas law affects the enforceability of the arbitration agreement.

In order to satisfy the fourth factor necessary for preemption, Texas law must refuse to enforce an arbitration agreement that the FAA would enforce, either because (1) the TAA has expressly exempted the agreement from coverage or (2) the TAA has imposed an enforceability requirement not found in the FAA. *Wilson*, 196 S.W.3d at 780. Where parties have asserted nothing in the TAA that would subvert enforcement of the agreement at issue, the FAA does not preempt the TAA. *Id*. In the present case, the parties do not argue that the TAA expressly exempts the agreement at issue from coverage, nor do they argue that the TAA imposes an enforceability requirement not found in the FAA.[1] In fact, the converse is true, as Provision argues that section

---

[1] An example of an enforceability requirement imposed by state law that is not found in the FAA is the TAA's requirement that arbitration agreements in personal injury cases must include the signature of each party's counsel. *See* Tex. Civ. Prac. & Rem. Code Ann. § 171.002(c)(2) (West 2005). This requirement has led to federal preemption of the TAA when it interferes with enforceability of an arbitration agreement. *See In re Nexion Health at Humble, Inc.*, 173 S.W.3d 67, 69 (Tex. 2005).

6

9 of the FAA requires the parties to expressly agree that judgment shall be entered on an award before such judgment may be entered, while the TAA does not impose such a requirement.[2]

The FAA preempts only those state laws that undermine the goals and policies of the FAA. *Volt*, 489 U.S. at 477-78. The FAA was initially designed "to overrule the judiciary's longstanding refusal to enforce agreements to arbitrate." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 219-220 (1985). "The primary purpose of the Federal Act is to require the courts to compel arbitration when the parties have so provided in their contract, despite any state legislative attempts to limit the enforceability of arbitration agreements." *Anglin*, 842 S.W.2d at 271. In light of this purpose, the FAA preempts only those state laws that prevent the enforcement of arbitration agreements, without affecting state laws that foster the federal policy favoring arbitration. *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 57-58 (1995); *see also Wachovia Sec., LLC v. Emery*, 186 S.W.3d 107, 111 (Tex. App.—Houston [1st Dist.] 2005, orig. proceeding) ("The FAA displaces state law only to the extent the state law conflicts with the FAA's purpose of enforcing the parties' contractual obligation to arbitrate.").

Because the TAA does not prohibit the enforceability of the arbitration agreement between Provision and BetaCorp, and because it promotes, rather than undermines, the goals and

---

[2] Section 9 of the FAA reads, in relevant part:

If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title.

9 U.S.C.A. § 9 (West 1999).

7

policies of the FAA, the FAA does not preempt the TAA in this case.[3]  As a result, it was not improper for BetaCorp to file its application for arbitration under the TAA or for arbitration proceedings to be conducted under the TAA, and we will apply the TAA in addressing Provision's remaining arguments on appeal.

**Ambiguity**

Provision argues that the arbitration provision is ambiguous because it does not specify a governing statute, meaning arbitration could conceivably be conducted under the TAA, the FAA, or the Texas Alternative Dispute Resolution Act (the "Texas ADR Act"), Tex. Civ. Prac. & Rem. Code Ann. §§ 154.001-.073 (West 2005).

Arbitration provisions that fail to specify a particular statute to govern arbitration are not considered fatally ambiguous by Texas courts.  *See Wilson*, 196 S.W.3d at 778-79 (interpreting arbitration agreement to invoke both federal and state law when "contracts in question reference neither the FAA nor TAA," but merely invoke law of place where project is located); *Henry v. Gonzalez*, 18 S.W.3d 684, 688 (Tex. App.—San Antonio 2000, pet. dism'd by agr.) (applying interstate-commerce analysis to determine that TAA applies to arbitration provision, despite fact that contract was internally inconsistent in naming both TAA and FAA as governing statute); *In re Education Mgmt. Corp., Inc.*, 14 S.W.3d 418, 422 (Tex. App.—Houston [14th Dist.] 2000, orig. proceeding) (holding that where agreement is silent as to application of FAA or TAA, question of whether transaction involves interstate commerce is issue of fact).  We have already

---

[3] Due to our holding, it is not necessary for us to determine whether the trial court could have entered judgment on the arbitration award if the FAA had preempted the TAA.  Similarly, we express no opinion regarding whether the FAA is applicable to non-binding arbitration agreements.

resolved the interaction between the TAA and the FAA in relation to the OEM agreement. Furthermore, the Texas ADR Act is clearly inapplicable, as it applies solely to cases in which a court has referred a pending dispute to alternative dispute resolution, which is not the case here. *See* Tex. Civ. Prac. & Rem. Code Ann. § 154.021; *Porter & Clements, L.L.P. v. Stone*, 935 S.W.2d 217, 220 (Tex. App.—Houston [1st Dist.] 1996, orig. proceeding). As a result, we hold that the arbitration agreement's failure to specify a governing statute does not render the agreement ambiguous.

Provision also argues that the arbitration agreement is ambiguous because it requires that arbitration take place under the law of the state in which "the complaining party is domiciled," and does not provide which law will apply in the event that there is more than one complaining party. Provision asserts that both Provision and BetaCorp are complaining parties, emphasizing the fact that Provision requested arbitration in California prior to BetaCorp filing an arbitration application in Texas. However, the record reflects that Provision requested California arbitration only in response to the letter from BetaCorp dated July 29, 2004, which served as a notice of material breach of the contract. In light of the circumstances, it would appear from the notice of material breach that BetaCorp was in fact the "complaining party," as contemplated by the arbitration agreement. While Provision asserts that there are now two complaining parties, a more accurate representation of the facts is that BetaCorp is the complaining party, while Provision merely sought arbitration in California in order to resolve BetaCorp's complaints. This view of the contract is consistent with the trial court's order on BetaCorp's application, which states that BetaCorp "is a 'complaining party' for purposes of the arbitration clause in the OEM agreement . . . by virtue of the letter dated July 29, 2004 from James D. Jameson, for [BetaCorp], to Samuel J. Tata, for [Provision]."

9

Furthermore, we must give effect to the objective intention of the parties as expressed or as is apparent in the writing, recognizing that a reasonable interpretation of an agreement is preferred to one that is unreasonable. *Westwind Exploration, Inc. v. Homestate Sav. Ass'n*, 696 S.W.2d 378, 382 (Tex. 1985). The arbitration provision can reasonably be interpreted to mean that in a dispute regarding the OEM agreement, arbitration is governed by the law of the state where the *initial* complaining party is domiciled. To hold otherwise would lead to the unreasonable result that the parties agreed to an arbitration provision in which a non-complaining party could assert a counter-complaint and file for arbitration in the state of its domicile, causing competing applications to be filed in two different states. A contract is ambiguous only if it is subject to two or more reasonable interpretations after applying the pertinent rules of construction. *Wilson*, 196 S.W.3d at 781. Because there is only one reasonable interpretation of the arbitration provision's "complaining party" language, we hold that the provision is unambiguous.

**Agreement to Arbitrate**

Provision argues that the arbitration provision does not constitute an "agreement to arbitrate" under the TAA because it does not expressly state that arbitration will be binding, and it dictates that arbitration will take place "prior to the commencement of filing any legal actions," which, Provision argues, necessarily contemplates non-binding arbitration.

The TAA allows a court to vacate an arbitration award if (1) there was no "agreement to arbitrate," (2) the issue was not adversely determined in a proceeding to compel arbitration under subchapter B of the TAA, and (3) the party asking the court to vacate the award did not participate in arbitration without objection. Tex. Civ. Prac. & Rem. Code Ann. § 171.088(a)(4).

10

BetaCorp, in its application for arbitration, expressly disclaimed any request for relief under subchapter B of the TAA, instead seeking orders from the court under subchapters C and D. Furthermore, Provision consistently objected to arbitration proceedings, expressly reserving all rights to contest any binding arbitration award entered in Texas in its filings in the arbitration. As a result, our determination of whether the arbitration award should be vacated turns solely on whether there was an "agreement to arbitrate."

Provision argues that the parties did not agree to binding arbitration so, as a result, there was no valid agreement to arbitrate under the TAA because the TAA contemplates only binding arbitration.

We agree with Provision's view that the TAA contemplates only binding arbitration, as the TAA makes no provision for nonbinding arbitration. *See In re Daniel S. Cartwright*, 104 S.W.3d 706, 711 (Tex. App.—Houston [1st Dist.] 2003, orig. proceeding) ("The TAA necessarily contemplates that the arbitration award be binding, and it makes no provision for a nonbinding arbitration procedure."); *Porter*, 935 S.W.2d at 221-22 ("[B]y its very nature, arbitration under the Texas Arbitration Act is a mechanism by which the parties to a contract reach a *binding resolution* to their differences.").

However, we disagree with Provision's contention that the parties did not agree to binding arbitration. The mere omission of the term "binding" from an arbitration agreement does not automatically transform it into a nonbinding arbitration agreement. *Porter*, 935 S.W.2d at 222. In *Porter*, the court held that arbitration under the TAA is necessarily binding, even where there is no express agreement that arbitration will be binding. *Id*. In reaching its conclusion, the court in

11

*Porter* relied on *McKee v. Home Buyers Warranty Corp. II*, 45 F.3d 981 (5th Cir. 1995), a Fifth Circuit case applying Louisiana arbitration law. *See Porter*, 935 S.W.2d at 221.

The facts of *McKee* are similar to the facts of the present case. The contract at issue in *McKee* stated that arbitration "shall precede any litigation attempted by either party." 45 F.3d at 983. This language is similar to the OEM agreement, which required arbitration "prior to the commencement of filing any legal actions." Based on this language, one of the parties argued that arbitration was merely a condition precedent to litigation, and therefore that the contract called for nonbinding arbitration. *Id.* The court rejected this view, concluding that under Louisiana law, arbitration is by definition a binding procedure because, like the TAA, "the Louisiana law simply makes no provision for non-binding arbitration." *Id.* Therefore, if the parties agreed to a nonbinding procedure, they did not agree to arbitration. *Id.* The court stated that in order to find the condition-precedent language to be ambiguous, it would have to determine that the parties did not really agree to arbitrate, even though the contract explicitly calls for arbitration. *Id.* "Such a stretch is plainly contrary to the federal and state policies favoring arbitrability." *Id.*

Arbitration under the TAA is by definition a binding procedure. *Porter*, 935 S.W.2d at 221-22. Like the court in *McKee*, we are reluctant to hold that BetaCorp and Provision agreed to a nonbinding procedure, because to do so would lead us to the conclusion that the parties did not agree to arbitrate, despite the fact that the contract explicitly calls for arbitration.[4] As a result, we hold that the parties agreed to binding arbitration.

---

[4] The fact that the arbitration provision states that arbitration must occur "prior to the commencement of filing any legal actions" is not inconsistent with a mutual agreement to binding arbitration because subsequent legal action is required in order to enforce arbitration awards under the TAA; such awards are not self-executing. In order to enforce an arbitration award, the party seeking enforcement must apply to the trial court for confirmation of the award. *See* Tex. Civ. Prac. & Rem. Code Ann. § 171.087 (West 2005). Upon confirmation, the trial court shall enter an enforceable judgment or decree on the award. *Id*. § 171.092.

12

## CONCLUSION

While the FAA is applicable to the parties' arbitration agreement, it does not preempt the TAA in this case. We hold that the arbitration agreement constitutes an unambiguous agreement to arbitrate, and provides for binding arbitration under the TAA. As a result, we affirm the trial court's judgment.

_____

Diane Henson, Justice

Before Justices Patterson, Puryear and Henson

Affirmed

Filed:   February 28, 2008